BEATRICE ORRICO, Plaintiff-Appellant, *v.* BEVERLY BANK, Defendant-Appellee.

First District (3rd Division)   No. 81—1499

Opinion filed September 1, 1982.

James P. Chapman and Jerry A. Esrig, both of Chapman and Royce, Ltd., of Chicago, for appellant.

Frank Glazer, Ltd., of Chicago (Frank Glazer, of counsel), for appellee.

JUSTICE McNAMARA delivered the opinion of the court:

Plaintiff, Beatrice Orrico, appeals from the trial court's entry of judgment notwithstanding the verdict of a jury that found defendant Beverly Bank (Bank) liable for the wrongful death of plaintiff's son, Frank. The trial court ruled that the Bank owed no duty to the decedent after he left the premises and that the criminal act of a third person was an unforeseeable, intervening and independent act. Plaintiff contends on appeal that the trial court erred in ruling as a matter of law that the Bank's undisputed negligence was not a proximate cause of decedent's death. The Bank cross-appeals from the trial court's post-trial ruling that it erred in excluding decedent's brothers and plaintiff from the beneficiary class for purposes of recovery under the Wrongful Death Act. The facts are virtually undisputed.

At the time of decedent's death by murder, on August 1, 1975, he was 31 years old. He had a history of several commitments to various mental institutions and he was receiving social security benefits for mental disability.

All relevant acts occurred within a small geographical area. Decedent's parents were divorced and he resided with his father, who was on psychiatric disability, at 101st Street and Charles Street in Chicago. The Bank, where decedent had opened checking and savings accounts in late June, is located at 103d and Charles. Graver Park, where decedent had been seen before his murder, is located about three blocks from his residence. Decedent's body was found 1½ blocks from the park.

On June 30, 1975, decedent deposited a retroactive disability check for $4,500 into his savings account at the Bank. On July 23, 1975, Irene Saia, an officer of the Bank, called the police to obtain plaintiff's unlisted telephone number. She then telephoned plaintiff to tell her that decedent had been in the Bank wanting to withdraw $4,000 to go to Hong Kong. Saia also stated that the check deposited

was for disability and that decedent did not appear disabled. Discussing her fears about what could happen to decedent if he were given such a large amount of money, plaintiff told Saia that she did not want him to have the money. Saia suggested that plaintiff contact the Bank's trust department. When plaintiff visited the trust department that week, an employee informed her that the Bank often acted as conservator for mentally disabled persons and that she should contact a lawyer to initiate conservator proceedings.

On July 29, through counsel, plaintiff petitioned the court for appointment of a conservator of decedent's estate. She intended that the Bank act as conservator. The court set a date in August for the incompetency hearing, and immediately appointed plaintiff temporary conservator to collect. That same day plaintiff delivered the court order to the Bank. A copy of the order admitted into evidence bears the date and time-stamp of the Bank depicting its receipt on July 29 at 11:36 a.m.

On July 31 plaintiff saw decedent who informed her that he had just transferred $2,500 into his checking account and that he sent a check in this amount to his girlfriend in Seattle. Plaintiff called the Bank and stated to Lucille Graham, a banking counselor, that she had delivered the requisite court order to the Bank on July 29 and that decedent should not be permitted to make any transactions. Graham stated that she was unaware of any court order, and that there was no reason not to permit decedent to transact business. Later that day, Graham found the court order of July 29.

According to the Bank, it ordinarily time-stamped a court order appointing a conservator and immediately placed a restraint on the account without further consultation or investigation. From July 29 to August 1, no such restraint was placed on decedent's account. The next afternoon, plaintiff visited the Bank and spoke to Graham. For the first time, Graham informed plaintiff that the court order was unsigned. Plaintiff returned to the Bank at about 5 p.m. with certified copies of her letters of office. Although plaintiff requested that an account immediately be opened, she was informed that an account would not be opened until the following Monday when someone from the legal department would be present.

At that time, decedent approached plaintiff in the Bank and complained loudly that she was trying to get his money. She departed, and decedent was permitted to withdraw $2,100 in one hundred dollar bills. Plaintiff testified without contradiction that she repeatedly expressed her concern for decedent's safety were he given a large amount of money.

After decedent withdrew the money he purchased a bottle of wine

and went to Graver Park. A spectator at a softball game there noticed decedent, a stranger to her, flashing a large stack of one hundred dollar bills to people at the park. Decedent then approached her and asked if she wanted some money. He departed and proceeded to display the money to others. The witness left the park at 6:30 p.m.

Decedent's body was found near midnight with a gunshot wound at the back of his head. Decedent had no money on his person. A neighbor testified that she heard a shot, looked out her window and saw a white male, wearing a red tam, bend over decedent's body and then run away. A homicide investigator called to the scene learned in his investigation that red-tammed youths loitered at the park. There was alcohol found in decedent's body, but in an amount insufficient to be declared legally intoxicated.

At the close of plaintiff's case defendant made a motion for a directed verdict alleging that, as a matter of law, the Bank owed no duty to decedent and that the intervening criminal acts of a third person were unforeseeable rendering the Bank's conduct not the proximate cause of decedent's death. The trial court stated that it believed the Bank owed a duty but that it would reserve its ruling as to the foreseeability issue. The court also ruled, as a matter of law, that the only next of kin entitled to recover under the Wrongful Death Act was decedent's son, and excluded from the beneficiary class plaintiff and decedent's two brothers. The jury returned a verdict against the Bank for $9,500.

Both sides submitted post-trial motions. The court granted the Bank's motion for judgment *n.o.v.* In its order, the court recited that the Bank owed no duty to decedent after he left its premises and that the criminal act was an unforeseeable intervening act. The court then granted plaintiff's motion, ruling that the decedent's two brothers and plaintiff should have been included in the kin class, and contingently granted plaintiff a new trial on damages if this court reversed its grant of a judgment *n.o.v.*

The question of duty is one of law. (*Cunis v. Brennan* (1974), 56 Ill. 2d 372, 308 N.E.2d 617.) We believe the trial court erred in ruling that the Bank owed no duty to decedent after he left its premises. We do not believe that this case falls into the category of a landowner's duty to warn of or make safe dangerous conditions on his premises; rather, the case is governed by the more general principle that a defendant owes a duty not to increase forseeable risk of harm to another. (Prosser, Torts sec. 53 (4th ed. 1971).) But this duty to act with reasonable care does not, as plaintiff suggests, extend to the world at large. Rather it is defined and limited by various considerations such as the relation between the parties, the gravity and foreseeability of

the harm, the utility of the challenged conduct and the burden of guarding against the injury. *Lance v. Senior* (1967), 36 Ill. 2d 516, 224 N.E.2d 231; *Ortiz v. City of Chicago* (1979), 79 Ill. App. 3d 902, 398 N.E.2d 1007; Prosser, Torts secs. 31, 43, 53 (4th ed. 1971).

■ We believe it is clear, under the present facts and circumstances, that the Bank owed a duty to decedent because of its relationship to him. The Bank's relationship with plaintiff, created by the court order giving her the right to conduct all of decedent's financial affairs, placed decedent in such a position to the Bank, which held his funds, that the Bank owed him a duty not to utilize his funds in a manner which would increase the risk of danger to him. We therefore reject the Bank's privity-type argument that the order created only a duty running from the Bank to the conservator, for the scope of the duty is not mechanically determined by privity. (*Cf. Rozny v. Marnul* (1969), 43 Ill. 2d 54, 250 N.E.2d 656.) Nor do we believe that the duty to decedent expired when he stepped off the Bank's premises with the funds in his hands. The duty here does not rest on decedent's status as invitee but instead stems from the tripartite relationship of decedent, the conservator, and the Bank which held his funds. The conservator-Bank relationship was created by the court for decedent's welfare, and as far as the Bank need concern itself, it should have viewed the appointment as a judicial determination, however temporary, that decedent's welfare depended on the cessation of his control over his funds. The conduct of the Bank in paying out funds to an incompetent in contravention of a court-appointed conservator's demands undermines the societal interests protected by such devices as guardianship and conservatorships.

■ The burden of the Bank to refrain from the challenged conduct was minimal. Where, as here, a court determines that a person is incompetent to handle his money, the Bank is free from any burden of ascertaining an individual's capacities. Indeed, the Bank under such circumstances need only carry out ministerially the court order.

We believe the risk of harm to decedent was foreseeable. The court order alone provided a basis to foresee some risk that an incompetent carrying over $2,000 in one hundred dollar bills could be robbed. Even if the harm foreseen is to property and the harm suffered in fact is to the person, the distinction should not be dispositive. (Prosser, Torts sec. 43, at 259-60 (4th ed. 1971).) Moreover, we cannot say, as a matter of law, that it is unforeseeable that an incompetent carrying a large sum of money could suffer physical injury during the course of a foreseeable robbery. Several factors point to the foreseeability of risk of harm to decedent if given a large sum of cash: the Bank's own initial suspicions of decedent which prompted it to enlist

the police to contact plaintiff, plaintiff's repeated communication with Bank personnel explaining her fear for decedent's safety and his background of mental instability, corroborated by his deposit of a disability check and the court appointment of plaintiff as conservator, and the fact that the appointment occurred at the Bank's suggestion. We therefore hold that the Bank owed a duty to decedent.

The cases cited by the Bank in support of its contention that it had no duty are inapposite. In each the courts merely held that no duty exists to an invitee to accede to criminal demands. (*Boyd v. Racine Currency Exchange, Inc.* (1973), 56 Ill. 2d 95, 306 N.E.2d 39; *Bance v. Crawford Savings & Loan Association* (1980), 80 Ill. App. 3d 491, 400 N.E.2d 39.) These decisions represent an appropriate weighing of the factors involved in the duty issue, for there is a strong societal interest in not inducing criminal activity by acceding to criminal demands, even at the cost of harm to an individual. No such interest is at stake in the present case. The court in *Altepeter v. Virgil State Bank* (1952), 345 Ill. App. 585, 104 N.E.2d 334, merely held that there were no facts surrounding a particular bank robbery when the plaintiff-customer was in the bank which would make the robbery foreseeable, and that the bank need not anticipate generally criminal acts by third persons to others on its premises. The case is clearly inapplicable to the present case where a bank affirmatively increases the risk of harm to others.

We next address the related question whether the intervening criminal act was an unforeseeable independent act relieving the Bank of liability for its negligence. The intervening criminal act of a third party does not relieve the first negligent actor of liability if the intervention was or should have been foreseen by the first actor even though the precise injury was not foreseeable. (*Neering v. Illinois Central R.R. Co.* (1943), 383 Ill. 366, 50 N.E.2d 497.) Although this principle is often applied in terms of causation, Prosser states that "[i]n its essence, however, it becomes again a question of the extent of the defendant's original obligation; ***. It is rather one of the policy as to imposing legal responsibility." (Prosser, Torts sec. 44, at 270 (4th ed. 1971).) The issue of foreseeability is at times a question for the court and "if varying inferences are possible, a question for the jury." (*Ney v. Yellow Cab Co.* (1954), 2 Ill. 2d 74, 81, 117 N.E.2d 74.) Since we have earlier stated that we cannot hold, as a matter of law, that it was unforeseeable for decedent to be robbed, we believe this was a question properly submitted to the jury. *Mrzlak v. Ettinger* (1975), 25 Ill. App. 3d 706, 323 N.E.2d 796.

Applying the rule of *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504, we believe the trial court erred in en-

tering judgment *n.o.v.* in the present case. We cannot say that the evidence presented when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on the evidence could ever stand. (For decisions holding that the intervention of a criminal act did not relieve the negligent actor of liability, see *Ney v. Yellow Cab Co.* (negligent party who left keys in car ignition held liable for damage to other vehicle struck by thief in the first vehicle); *Neering v. Illinois Central R.R. Co.* (railroad liable for negligence when plaintiff was assaulted at station late at night where defendant had knowledge of "potential source of danger" to plaintiff); *Danile v. Oak Park Arms Hotel, Inc.* (1964), 55 Ill. App. 2d 2, 203 N.E.2d 706 (hotel liable for negligence when bellboy raped plaintiff); *Liberty National Life Insurance Co. v. Weldon* (1957), 267 Ala. 171, 100 So.2d 696 (insurance company liable for wrongful death in negligently issuing a policy to a beneficiary with no insurable interest, when beneficiary thereafter murdered insured).) See also *Hetherton v. Sears, Roebuck & Co.* (3d Cir. 1979), 593 F. 2d 526; *Hicks v. United States* (D.C. Cir. 1975), 511 F. 2d 407; *McLeod v. Grant County School District No. 128* (1953), 42 Wash. 2d 316, 255 P. 2d 360.

We are aware of a line of decisions invoking the principle that the first actor is not liable if his negligent act created merely a condition upon which the intervenor acted. (See, *e.g., Felty v. General Telephone Co.* (1977), 47 Ill. App. 3d 427, 362 N.E.2d 43.) This principle applies, however, only "where the forces set in operation by the defendant have come to a rest in a position of apparent safety, and some new force intervenes." (Prosser, Torts sec. 42, at 248 (4th ed. 1971); *Reed v. Danville Concrete Products Co.* (1981), 102 Ill. App. 3d 205, 429 N.E.2d 605.) It is inapplicable to the present case.

■ The Bank maintains for the first time on appeal that the duty, which purportedly runs only to the conservator, is limited to the amount wrongfully paid. (Ill. Rev. Stat. 1979, ch. 26, par. 4—103(5).) We have stated that the Bank owes a duty, not based on privity, to decedent thus obviating our need to address whether the conservator's rights are restricted by the statute, for plaintiff sues as next of kin, and not as conservator. Moreover, the warranty approach of the Commercial Code is particularly unsuited for redress of personal injuries. (*Cf. Moorman Manufacturing Co. v. National Tank Co.* (1982), 91 Ill. 2d 69, 435 N.E.2d 443.) And even under the Code, section 4—103(5) is inapplicable since we believe that the present case is distinct from negligence in the "handling of an item" (see *Owens v. Andrews Bank & Trust Co.* (1975), 265 S.C. 490, 220 S.E.2d 116), and that section 4—103(5) does not specifically displace a tort action for personal

injuries. See Ill. Rev. Stat. 1979, ch. 26, par. 1—103.

■ We also reject the Bank's argument that plaintiff failed to prove decedent's use of ordinary care. The essence of plaintiff's complaint was that the Bank was or should have been aware that the nature of decedent's mental impairment would cause him to act irrationally. The matter of decedent's conduct was properly left to the jury, and we will not disturb that determination. *Dezort v. Village of Hinsdale* (1976), 35 Ill. App. 3d 703, 342 N.E.2d 468.

The Bank has filed a cross-appeal from the trial court's ruling that it erred in excluding plaintiff and decedent's brothers from the beneficiary class for purposes of recovery under the Wrongful Death Act. The Bank, however, has not presented any arguments in its brief on the propriety of the contingent ruling of the trial court on that issue. Consequently, the issue is waived. 73 Ill. 2d R. 341(e)(7).

For the reasons stated, the order of the circuit court of Cook County granting judgment *n.o.v.* in favor of the Bank is reversed, and the cause is remanded for a new trial on damages consistent with the trial court's contingent ruling on plaintiff's post-trial motion.

Affirmed in part; reversed in part and remanded.

WHITE, P. J., and RIZZI, J., concur.