(text box: 1) NO. 5-03-0084

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

________________________________________________________________________

MORRIS KOHN, )  Appeal from the 

)  Circuit Court of

    Plaintiff-Appellant, )  Madison County.

      )

) 

v. )  No. 99-L-342

)

LAIDLAW TRANSIT, INC., MAYFLOWER )

CONTRACT SERVICES, INC., and ALICE M. )

MILLENDER, )  Honorable

)  George J. Moran, Jr.,

    Defendants-Appellees. )  Judge, presiding.

________________________________________________________________________

PRESIDING JUSTICE CHAPMAN delivered the opinion of the court:

The plaintiff, Morris Kohn, appeals from an order granting a summary judgment in favor of the defendants.  We affirm. 

I.  BACKGROUND

Kohn's amended complaint contains three nearly identical counts for negligence against the defendants, Laidlaw Transit, Inc., Mayflower Contract Services, Inc., and Alice M. Millender, a school bus driver.  Kohn alleges that Millender was operating a school bus in a southerly direction on Washington Avenue in the City of Madison, where she stopped the bus to drop off a passenger (Tyrone Collins).  He alleges that he collided with Tyrone as Tyrone attempted to cross Washington Avenue in front of the bus, because Millender failed to operate the mechanical arm and stop sign on the bus.  Kohn further alleges that he was attacked by a number of bystanders and suffered serious and permanent injuries to his face and head when he attempted to render assistance to Tyrone.  Kohn contends that Millender owed a duty to him to exercise reasonable care in using the arm and sign on the side of the bus to warn vehicles and prevent them from passing while passengers were departing.  Kohn alleges that the defendants committed the following negligent acts or omissions which proximately caused his injuries:

"(A) Failed to operate, utilize, and extend the mechanical 'stop' sign and arm from the side of its bus so as to prevent the Plaintiff's vehicle from colliding with one of the bus' [
sic
] passengers;

Failed to operate, utilize, and extend a mechanical 'stop' sign and arm from the side of said bus to warn the Plaintiff of the existence of departing bus passengers;

Failed to render assistance to the Plaintiff as he was being assaulted, attacked, and battered by his assailants; and [
sic
]

Failed to inform the angry mob which had gathered around the Plaintiff that the mechanical 'stop' sign and arm had not been extended from the side of said bus[;] [and]

Negligently and carelessly made statements at the scene of the accident and deployed the mechanical 'stop' arm after the Plaintiff's vehicle struck the child[,] which inflamed the bystanders to take hostile actions against the Plaintiff."

The defendants stated in their renewed motion for a summary judgment that Millender was employed as a bus driver for Laidlaw Transit, Inc., and Mayflower Contract Services, Inc.  Millender stopped the bus to drop off Tyrone and Jessica Collins.  When Millender stopped the bus, she opened the door, which extended the mechanical arm and stop sign.  Tyrone and Jessica's mother entered the bus to sign her children off the bus.  Millender closed the door when they exited the bus, which automatically retracted the mechanical arm and stop sign.  

The defendants' motion contains the following four arguments: (1) the defendants owed no duty to Kohn because Tyrone's mother signed Tyrone off the bus and had custody of him at the time of the incident, (2) the defendants fulfilled any duty imposed by Illinois law because Millender extended the arm and sign when Tyrone was exiting the bus, (3) the defendants did not owe Kohn a duty because he was the victim of a criminal attack by other people, and (4) the defendants' alleged negligence was not the proximate cause of Kohn's injuries because the attack constituted a subsequent independent act that broke the causal connection between Millender's acts or omissions and Kohn's injuries.  Without explanation the trial court granted the defendants' renewed motion. 

A summary judgment is appropriate when the pleadings, depositions, affidavits, and admissions on file, viewed in the light most favorable to the nonmoving party, reveal that no genuine issue of material fact exists and that the moving party is entitled to a judgment as a matter of law.  
Ragan v. Columbia Mutual Insurance Co.
, 183 Ill. 2d 342, 349, 701 N.E.2d 493, 496 (1998).  A summary judgment is a drastic remedy that is allowable only when the right of the moving party is clear and free from doubt.  
Jones v. Chicago HMO Ltd. of Illinois
, 191 Ill. 2d 278, 291, 730 N.E.2d 1119, 1127 (2000).  A motion for a summary judgment is reviewed 
de novo
.  
ESM Development Corp. v. Dawson
, 342 Ill. App. 3d 688, 692, 795 N.E.2d 397, 401 (2003).  Our function on an appeal from the grant of a summary judgment is limited to determining whether the trial court correctly found that no genuine issue of material fact existed and, if that was the case, whether the trial court correctly entered a judgment as a matter of law.  
General Casualty Co. of Illinois v. Carroll Tiling Service, Inc.
, 342 Ill. App. 3d 883, 889, 796 N.E.2d 702, 707 (2003).  The following evidence was before the trial court.  

Morris Kohn's Testimony

Kohn testified as follows.  Immediately preceding the incident, he had been on Third Street in Madison and turned right at a four-way stop onto Washington Avenue.  When he turned onto Washington Avenue, a two-lane, two-way street, he noticed a bus parked about two short blocks ahead of him on the right.  The bus's lights were not flashing and the mechanical arm and stop sign were not extended.  He was traveling very slowly and approached a four-way stop at the end of the first block on Washington Avenue.  A car was stopped at the same intersection to his left.  He waved at the car to turn, and the car turned left onto Washington Avenue ahead of Kohn.  After the stop sign, he continued to approach the bus, which was parked in the middle of the block on the south side of an alley.  He was traveling about 5 to 10 miles per hour.  Kohn saw the car that he had waved on park behind the bus on the north side of the alley.  He observed that the car was white, had four doors, and contained four male African-American occupants (Kohn is Caucasian).  The occupants exited the vehicle and walked toward some boxcar trailers on the right side of the street directly across from a housing project.  He described the surrounding area as a "bad" area.   A large crowd of people had gathered, and they were talking by the bus, which was parked at the curb and not occupying the entire traffic lane.  As he approached the bus, he still did not see any flashing lights or the mechanical arm and stop sign extended.  He approached the bus cautiously, and as the front end of his car reached the front end of the bus, Tyrone appeared.  Kohn "stomped" on his brakes and he observed Tyrone run away crying.  He does not know if he struck Tyrone.  Tyrone did not hit the ground and he was not limping.  (Tyrone returned to school two days later and had not filed suit against Kohn.)  

The front end of Kohn's vehicle came to rest a few feet ahead of the front end of the bus, such that when he exited the vehicle to check on Tyrone, he stood directly across from the bus driver, who was sitting in her seat.  When Kohn got out of his vehicle, a group of men surrounded him.  They began yelling at Kohn, "What are you doing running around, running stop signs?" (referring to the mechanical arm and stop sign on the bus).  The bus driver sat in the bus and never got out; she leaned and spoke out of her window.  While Kohn was surrounded by this group of men, he said to the bus driver, "Lady, tell the people that the sign was not out."  The bus driver said that the sign was out.  She further stated: "I'm not lying.  The sign was out."  The group of men continued to accuse Kohn, saying, "Why are you trying to hurt that little boy?"  Kohn replied that he was not trying to hurt anyone, that he had children of his own, and that the sign had not been out.

About 50 people had gathered around him at this point, including the four men he had waved through the intersection.  Three or four men in particular were "on his case."  One man, standing directly in front of him, was interrogating him.  He observed one of the men who had been in the parked vehicle walk to the trunk of the vehicle and return with a tire iron.  The man interrogating him took a step away from Kohn, and Kohn was struck from behind on the side of his head with what he believes was the tire iron.  He fell to the ground and was beaten severely by the four men who had parked behind the bus, who he believed were intoxicated.  He rose to his feet and was beaten down again.  He heard police sirens as he rose a second time and suddenly found himself alone.  He said to the bus driver: "I hope you're happy, Lady.  Is this what you wanted?"  The bus driver said: "I'm so sorry, sir.  They should not have done that.  You're right.  The sign was not out."  Kohn asked her to tell the police the truth and she said she would.  

Kohn provided the police with descriptions of his attackers, including one who had a "bum" eye and scars.  Although the police recognized the descriptions of Kohn's attackers, they have not been caught and their identities remain unknown.  Kohn sustained severe and permanent injuries. 

Alice Millender's Testimony

Millender testified that she picked up a group of Head Start children at a Venice school in a 35-passenger bus.  Immediately preceding the incident, Millender had dropped a child off at the corner of Market Street and Washington.  The yellow lights on the bus were on as she turned right onto Washington Avenue and headed toward Tyrone's stop. 

The light and sign system on the bus is called an "eight-way" because there are two yellow lights and two red lights in the rear of the bus and two of each color in the front.  To activate the lights the driver must hit a master switch or flash button before the door is opened.  If the switch is activated, the yellow lights flash first, and when the door is opened, the mechanical arm and stop sign are automatically extended and the red lights begin to flash.  If the switch is not activated, only the door opens.    

Millender stopped at Tyrone's house and blew her horn, because Head Start policy requires the child's parent to sign the child off the bus.  She was stopped "kind of in the street, not all the way to curb."  The yellow lights were still flashing.  When Tyrone's mother approached the bus, Millender opened the bus door, which automatically extended the mechanical arm and stop sign and activated the red flashing lights.  Tyrone's mother signed for her children and they exited the bus.  As they started walking to their house, Millender closed the door, which retracted the mechanical arm and stop sign.  She then noticed that Tyrone was not with his mother, so she opened the door again to see where he was.  She had not reactivated the arm, sign, and lights.  Millender shouted for Tyrone but he did not respond.  She heard brakes squealing, which drew her attention to her left, where she saw Kohn's vehicle come to a halt next to the bus.  She saw Tyrone fall to the ground then walk away.  

People began crowding the area from different directions.  A group of angry-looking men began asking Kohn questions such as "Didn't you see this bus?" and "Don't you know there's [
sic
] kids here–when there's a bus, there's [
sic
] kids?"  They started to beat Kohn, at which time Millender shouted out her bus window to the men: "Come on, guys.  Don't do that.  Don't do that."  Millender claims that she got off of the bus and got between the men and Kohn and that they proceeded to stop beating him.  She estimates that the beating lasted about 10 to 15 seconds or more.  

Millender does not recall Kohn saying anything to her during the incident, but after the beating had begun, she heard Kohn telling his attackers that the arm and sign had not been extended at the time of the accident.  Kohn's attackers did not ask Millender whether the arm and sign had been extended.  She recalls telling another woman on the bus that the "stop arm" was out and yelling to the police from her window that the arm was out.  Millender also testified that prior to the beating, in the excitement of the moment, she may have yelled out her window in Kohn's direction that the stop arm had been extended.  After the beating concluded, Kohn and Millender stood by the side of the bus and he said that the arm had not been out and Millender said that it had.  Millender got on the bus and realized at that moment that she had closed the door when Tyrone exited and that the arm and sign had retracted.  She later told the police that she had closed her door, which retracted the arm so that the sign had not been out when Kohn approached the bus.

II.  ANALYSIS

We first address the defendants' contention that Kohn cannot defeat a summary judgment motion with theories that he failed to plead in his complaint.  Specifically, the defendants contend that Kohn waived his arguments that the bus had blocked Kohn's view of Tyrone and that the defendants' actions constituted a tort under section 876(b) of the Restatement (Second) of Torts (Restatement (Second) of Torts §876(b) (1979)). 

Kohn argues that the defendants breached a duty to Kohn "by blocking his view of the little boy[,] which ultimately caused a condition which led to the Plaintiff's injuries."  We find that Kohn waived this argument because he did not plead it in his amended complaint or advance it before the trial court.  The only evidence in the record that supports Kohn's contention that he did not waive the argument is his deposition testimony that he thought Millender had been parked where she should not be.  However, nowhere in Kohn's amended complaint can we find an allegation relating to the location of the bus.  Further, Kohn did not address the matter in his written response to the defendants' motion for a summary judgment or at the hearing on the defendants' renewed motion.  The trial court could not have considered this matter in granting a summary judgment in favor of the defendants; therefore, neither will we.  See 
McIntosh v. Cueto
, 323 Ill. App. 3d 384, 389, 752 N.E.2d 640, 644 (2001); 
Pagano v. Occidental Chemical Corp.
, 257 Ill. App. 3d 905, 911, 629 N.E.2d 569, 574 (1994).  

On the other hand, we find that Kohn did not waive his argument that the defendants' conduct constituted a tort under section 876(b) of the Restatement (Second) of Torts.  We discuss the point at length below.  However, for the purpose of determining whether Kohn waived this claim, we find that the allegation in Kohn's amended complaint that the defendants "[n]egligently and carelessly made statements at the scene of the accident and deployed the mechanical 'stop' arm after the Plaintiff's vehicle struck the child[,] which inflamed the bystanders to take hostile actions against the Plaintiff," sufficiently pleads the theory of liability embodied by section 876(b) of the Restatement (Second) of Torts, such that the defendants and the trial court were on notice of the claim at the time of the summary judgment hearing.  Because we find that Kohn pled this claim, he has not waived this argument on appeal.   

We now turn to the merits of Kohn's appeal.  The primary issue before us is whether the defendants owed a duty of care to Kohn, because without a duty there can be no negligence.  The parties address this element of negligence from very different perspectives.  Kohn first argues that he alleged facts sufficient to demonstrate that the defendants violated two statutes and that the violations constitute 
prima facie
 negligence.  Kohn also argues that the question of duty should be governed by ordinary negligence principles.  The defendants argue that they did not owe Kohn a duty because no special relationship existed between them and Kohn. 

Because this is a negligence action, to prevail, Kohn must set out sufficient facts to establish that the defendants owed a duty to him, that they breached that duty, and that the breach proximately caused Kohn's injuries.  See 
Weidner v. Midcon Corp.
, 328 Ill. App. 3d 1056, 1060, 767 N.E.2d 815, 819 (2002).  It is not sufficient that Kohn's amended complaint merely alleges a duty; he must also allege facts from which the law will raise a duty and specific facts showing an omission of that duty and resulting injury.  See 
Weidner
, 328 Ill. App. 3d at 1060, 767 N.E.2d at 819.  

Whether a duty exists is a matter of law.  The general rule is that a person does not have a duty to control the conduct of another to prevent a criminal attack on a third party.  
Hills v. Bridgeview Little League Ass'n
, 195 Ill. 2d 210, 228-29, 745 N.E.2d 1166, 1178-79 (2000).  This is true unless a special relationship exists between the actor (Millender) and the third person (Kohn's attackers) or the actor and the person seeking protection (Kohn).  Restatement (Second) of Torts §315 (1979); 
Sanke v. Bechina
, 216 Ill. App. 3d 962, 964-65, 576 N.E.2d 1212, 1214 (1991).  Here, Kohn has not alleged or argued that a special relationship exists which gives rise to a duty.  Therefore, we apply ordinary negligence principles to decide whether to recognize a duty in this case.  

We must decide whether the parties stand in relation to one another such that the law should impose on the defendants an obligation of reasonable conduct for the benefit of Kohn.  We consider the following factors in making this decision: (1) the reasonable foreseeability of injury, (2) the likelihood of injury, (3) the magnitude of the burden on the defendants in preventing the injury, and (4) the consequences of imposing that burden on the defendants.  
LaFever v. Kemlite Co.
, 185 Ill. 2d 380, 388-89, 706 N.E.2d 441, 446 (1998).  Our consideration of these factors, discussed below, leads us to conclude that the parties do not stand in relation to one another such that we are required to impose a duty in this case.  

Kohn's injuries resulted from a vicious beating to his head and face at the hands of four angry and allegedly intoxicated men.  How foreseeable and likely were these injuries to result from 
Millender's
 conduct as alleged in Kohn's complaint?  In order for Kohn to establish foreseeability for the purpose of proving the existence of a legal duty, he must show that the criminal conduct was objectively reasonable to expect.  
Cobb v. Martin IGA & Frozen Food Center, Inc.
, 337 Ill. App. 3d 306, 314, 785 N.E.2d 942, 949 (2003).  There is no evidence in the record to support this proposition.  Millender testified that she had no knowledge of crime in the area of town in which this occurred.  She did not know Kohn's attackers, nor did she see any of them brandish a weapon.  The entire incident lasted only a few seconds.  There is simply no evidence in this case which tends to show that it was objectively reasonable for Millender to expect Kohn to be attacked by an angry mob following an accident involving her operation of the bus and a passenger.  Therefore, we cannot say that Kohn's injuries were reasonably foreseeable or likely to occur.  

We also find that imposing a duty on bus drivers like Millender to protect nonpassengers and to prevent intentional and criminal conduct that may arise as a result of their operation of a bus would create an impossible burden and result in potentially adverse consequences.  Such a duty would be incapable of definition and be open to almost limitless applicability.  Based on the foregoing, we hold that the parties do not stand in relation to one another such that the law should impose on the defendants an obligation of reasonable conduct for the benefit of Kohn in this case.  There being no duty, Kohn's negligence claim must fail, and the trial court's entry of a judgment in favor of the defendants was proper.    

Kohn attempts to counter our finding of no duty by arguing that Millender was negligent because she voluntarily undertook a duty to aid him and was not successful in ending the attack.  To establish a voluntary undertaking on her part, Kohn points to Millender's deposition testimony that she yelled at the attackers to stop beating Kohn and then got off the bus and "started pushing people back."  It is unclear from the record whether she contends that she pushed away Kohn's attackers or people in the crowd that had gathered.  Regardless, Kohn contends that Millender was negligent in undertaking to stop the assault because she was not successful.  

Illinois's common law generally imposes no duty to rescue an injured stranger upon one who did not cause the injury.  
Rhodes v. Illinois Central Gulf R.R.
, 172 Ill. 2d 213, 232, 665 N.E.2d 1260, 1270 (1996).  Under the voluntary-undertaking theory, however, the defendants could be liable for Kohn's injuries if Millinder gratuitously undertook to assist Kohn and failed to exercise due care in her performance of the undertaking.  See 
Rhodes
, 172 Ill. 2d at 239, 665 N.E.2d at 1273.  Kohn's amended complaint itself lacks any allegation that would give rise to such a duty.  In fact, he alleges that Millender failed to render any assistance at all.  Thus, we do not have to consider whether Millender's conduct constituted a gratuitous undertaking to assist Kohn and whether it was sufficient to raise a duty in this case. 

We also note that the record amply demonstrates the absence of proximate cause.  The issue of proximate cause can be a matter of law where there is no material issue regarding the matter or where only one conclusion is clearly evident.  
Williams v. University of Chicago Hospitals
, 179 Ill. 2d 80, 88, 688 N.E.2d 130, 134 (1997); 
Benner v. Bell
, 236 Ill. App. 3d 761, 770, 602 N.E.2d 896, 902 (1992).  A summary judgment in favor of the defendants was proper because the facts presented are so clearly one-sided that Kohn would never be able to recover.  

To find proximate cause, we must be able to say that Kohn's injuries are the natural and probable result of the 
defendants'
 acts or omissions and that an ordinarily prudent person could have foreseen Kohn's injuries as likely to occur as a result of Millender's conduct.  See 
Neering v. Illinois Central R.R. Co.
, 383 Ill. 366, 380, 50 N.E.2d 497, 503 (1943).  Kohn urges that his injuries were natural and probable and thus foreseeable because he is Caucasian and his attackers are African American.  He also contends that it was evident to Millender that the incident occurred in a "bad" part of town.  However, Millender testified that she had no knowledge of crime in the area, and we are not prepared to consider the participants' races as determinative of proximate cause.  As we discussed above, there is nothing natural and probable about a man being ambushed and brutally attacked by strangers while on his way to work after accidentally striking a small child departing a school bus.  Our position finds support in Illinois decisional law which prescribes to the general rule that a person has no duty to anticipate the criminal acts of third parties.  See 
Hills v. Bridgeview Little League Ass'n
, 195 Ill. 2d 210, 238, 745 N.E.2d 1166, 1184 (2000); 
Boyd v. Racine Currency Exchange, Inc.
, 56 Ill. 2d 95, 306 N.E.2d 39 (1973).  Comment 
d
 to section 302B of the Restatement (Second) of Torts also supports our decision:

"Normally the actor has much less reason to anticipate intentional misconduct than he has to anticipate negligence.  
In the ordinary case he may reasonably proceed upon the assumption that others will not interfere in a manner intended to cause harm to anyone.  This is true particularly where the intentional conduct is a crime, since under ordinary circumstances it may reasonably be assumed that no one will violate the criminal law
.  Even where there is a recognizable possibility of the intentional interference, the possibility may be so slight, or there may be so slight a risk of foreseeable harm to another as a result of the interference, that a reasonable man in the position of the actor would disregard it."  (Emphasis added.)  Restatement (Second) of Torts §302B, Comment 
d
, at 89 (1965).   

Applying this reasoning to the facts of this case, we conclude that it would have been natural and probable for the group of people gathered at the scene to come to Tyrone's aid, or even perhaps question Kohn and detain him until the authorities arrived.  The evidence involving proximate cause so overwhelmingly favors the defendants that a contrary verdict could never stand.  We hold that the intervening acts of Kohn's attackers, and not Millender's alleged conduct, are the proximate cause of his injuries.  Thus, the trial court's entry of a summary judgment in favor of the defendants was proper on this additional basis.

Our resolution regarding proximate cause disposes of Kohn's argument that the record establishes that Millender violated certain statutes which gave rise to a duty in this case.  Specifically, Kohn argues that he pled sufficient facts that tend to prove that Millender violated a disorderly conduct statute–section 26-1(a) of the Criminal Code of 1961 (720 ILCS 5/26-1(a) (West 2002)), and a statute governing a bus driver's operation of the mechanical arm and stop sign–section 11-1414(b) of the Illinois Vehicle Code (625 ILCS 5/11-1414(b) (West 2002)).  A violation of a statute designed for the protection of human life or public safety is 
prima facie
 evidence of negligence and creates a cause of action if the violation has a direct and proximate connection with the injury.  
Parra v. Tarasco, Inc.
, 230 Ill. App. 3d 819, 827, 595 N.E.2d 1186, 1191 (1992); 
Kacena v. George W. Bowers Co.
, 63 Ill. App. 2d 27, 33, 211 N.E.2d 563, 567 (1965).  A statutory violation does not create liability; rather, liability exists only if the violation is determined to be the proximate cause of the injury.  
Ney v. Yellow Cab Co.
, 2 Ill. 2d 74, 78-79, 117 N.E.2d 74, 78 (1954).  Kohn's argument fails because we have held that Millender's alleged conduct was not the proximate cause of Kohn's injuries.  Therefore, we need not decide whether the statutes relied on by Kohn are designed for the protection of human life or whether the record reflects that Millender violated the statutes.   

The final issue before us is whether a judgment should have been entered in favor of the defendants with regard to Kohn's claim premised on the substantial-assistance theory of liability embodied in section 876(b) of the Restatement (Second) of Torts.  This court has referred to this theory of liability as "in-concert liability."  
Fortae v. Holland
, 334 Ill. App. 3d 705, 714-21, 778 N.E.2d 159, 167-72 (2002).  Section 876(b) of the Restatement (Second) of Torts states the following: 

"For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he

***

(b)  knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself[.] " Restatement (Second) of Torts §876(b), at 315 (1979).

We find Comment 
d
 and Illustrations 9 and 11 in section 876 instructive to our analysis:

"Advice or encouragement to act operates as a moral support to a tortfeasor[,] and if the act encouraged is known to be tortious[,] it has the same effect upon the liability of the adviser as participation or physical assistance.  If the encouragement or assistance is a substantial factor in causing the resulting tort, the one giving it is himself a tortfeasor and is responsible for the consequences of the other's act.  This is true both when the act done is an intended trespass (see Illustrations 4 and 5) and when it is merely a negligent act.  (See Illustration 6).  The rule applies whether or not the other knows his act is tortious.  (See Illustrations 7 and 8).  It likewise applies to a person who knowingly gives substantial aid to another who, as he knows, intends to do a tortious act.  

The assistance of or participation by the defendant may be so slight that he is not liable for the act of the other.  In determining this, the nature of the act encouraged, the amount of assistance given by the defendant, his presence or absence at the time of the tort, his relation to the other
[
,
] 
and his state of mind are all considered
.  (See Illustration 9).  
Likewise, although a person who encourages another to commit a tortious act may be responsible for other acts by the other 
(see Illustration 10), 
ordinarily he is not liable for other acts that, although done in connection with the intended tortious act, were not foreseeable by him
.  (See Illustration 11).  
In determining liability, the factors are the same as those used in determining the existence of legal causation when there has been negligence 
(see §442) or recklessness.  (See §501).

* * *

9.  A is employed by B to carry messages to B's workmen.  B directs A to tell B's workmen to tear down a fence that B believes to be on his own land but that in fact, as A knows, is on the land of C.  A delivers the message and the workmen tear down the fence.  Since A was a servant used merely as a means of communication, his assistance is so slight that he is not liable to C.

***

11.  A supplies B with wire cutters to enable B to enter the land of C to recapture chattels belonging to B, who, as A knows, is not privileged to do this.  In the course of the trespass upon C's land, B intentionally sets fire to C's house.  A is not liable for the destruction of the house."  (Emphasis added.)  Restatement (Second) of Torts §876, Comment 
d
 & Illustrations 9, 11, at 315, 317 (1979).  

Kohn argues that Millender provided substantial encouragement to his attackers by telling them that the arm and stop sign had been extended at the time of the accident, and he argues that she is therefore liable for engaging in joint concerted tortious activity with Kohn's attackers.  The defendants argue that the record does not reveal any evidence that they gave any assistance or encouragement to Kohn's attackers, and they also argue that Millender's alleged conduct does not rise to the level for which liability is contemplated in section 876(b).  We agree with the defendants.

Few Illinois cases have addressed section 876(b) of the Restatement (Second) of Torts, but we find three to be particularly instructive in this area: 
Sanke v. Bechina
, 216 Ill. App. 3d 962, 576 N.E.2d 1212 (1991), 
Umble v. Sandy McKie & Sons, Inc.
, 294 Ill. App. 3d 449, 690 N.E.2d 157 (1998), and 
Fortae v. Holland
, 334 Ill. App. 3d 705, 778 N.E.2d 159 (2002).  The court in 
Sanke v. Bechina 
stated: "The elements of section 876 require such affirmative conduct that one's own actions create a duty.  Under section 876, liability may be imposed only in instances where the defendant's conduct is more than benign."  
Sanke v. Bechina
, 216 Ill. App. 3d 962, 971, 576 N.E.2d 1212, 1218 (1991).  Thus, the 
Sanke
 court reversed the trial court's dismissal of the plaintiff's claims on the basis that the alleged conduct, encouraging another to exceed the speed limit and to disregard a stop sign, was wrongful.  The court in 
Umble v. Sandy McKie & Sons, Inc.
, affirmed the trial court's dismissal of the plaintiff's complaint premised on section 876(b) because the defendant's acts of repairing a tire and a headlight on a car later delivered to an intoxicated owner were not "inherently wrongful" and because the defendant did not "actively encourage" the vehicle owner to drive drunk.  
Umble v. Sandy McKie & Sons, Inc.
, 294 Ill. App. 3d 449, 452, 690 N.E.2d 157, 159 (1998).  The courts in 
Sanke
 and 
Umble
 recognized the distinction that the Restatement (Second) of Torts makes in assessing the quality of a defendant's conduct before subjecting the actor to liability, 
i.e.
, it is not enough that a defendant assist or encourage another to engage in a tort; rather, to subject a defendant to liability, the assistance or encouragement must be substantial, not merely slight.   

We find that the defendants' conduct in this case does not rise to the level for which liability is contemplated in section 876(b).  Millender's alleged conduct is akin to A's conduct in Illustration 9 set forth above.  Her yelling out the window to Kohn's attackers that the mechanical arm and stop sign had been out at the time of the accident, even if known by her to be untrue, represents such slight participation in the events which led to Kohn's injuries that liability cannot be imposed.  A review of the factors set forth in Comment 
d
 to section 876(b) and discussed by the courts in 
Sanke
 and 
Fortae
 urges this finding.  Millender did not tell Kohn's attackers to assault him.  She did not cheer them on. Nor did they ask Millender whether the arm was out.  According to Millender, she believed what she said to be true at the time that she said it and did not realize her mistake until the assault had been concluded.  There is no evidence that reflects ill will on her part.  She did not know Kohn or his attackers and shared no relationship with any of them.  Even if we were to classify her otherwise-benign statement as assistance or encouragement, which we do not,
 
Kohn's claim premised on section 876(b) still fails because, as we have stated before, it was unforeseeable that Kohn would be attacked in the manner he was as a result of Millender's operation of the bus and the preceding accident.  See Restatement (Second) of Torts §876, Comment 
d
 & Illustration 11 (1979).     

Our review of the record demonstrates that there are no disputed material fact issues and that the defendants were entitled to a judgment in their favor as a matter of law.  Accordingly, we affirm the trial court's judgment.  

III. CONCLUSION

For the foregoing reasons, we affirm the trial court's order granting a summary judgment in favor of the defendants, Laidlaw Transit, Inc., Mayflower Contract Services, Inc., and Alice M. Millender.  

Affirmed. 

WELCH and HOPKINS, JJ., concur.

COMMENTS AND ANNOTATIONS
Text Box 1:

TEXT BOXES
NOTICE

Decision filed 04/12/04.  The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.