SECOND DIVISION
March 14, 2006

No. I-04-3567

MITCHELL M. ISEBERG, Individually and   as an
Officer and Director of the Liekam Farm Development
Corporation, and CAROL ISEBERG, His Wife,

                        Plaintiffs-Appellants,

      v.                              )

                                  )

SHELDON GROSS, Individually and
as an Officer, Director, Partner, Agent and or
Joint Adventurer of the Vernonshire Auto Laundry
Group, Inc., and the Leikam Farm Joint Venture and
HENRY FRANK, Individually and as a Partner and or
Joint Adventurer with the Leikam Farm Development
Corporation, and as a Partner, Agent, and or Joint
Adventurer of Mitchell Iseberg and the Leikam
Farm Joint Venture,

                        Defendants-Appellees.

Appeal from the
Circuit Court of
Cook County.

Honorable
Lynn M. Egan,
Judge Presiding.

JUSTICE SOUTH delivered the opinion of the court:

This interlocutory appeal arises from an order of the circuit court that dismissed with

prejudice counts I, II, and V of plaintiff's third-amended complaint pursuant to section 2-615 of

the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2004)).  This appeal is only with

respect to the dismissal of counts I and II.

According to the facts as alleged in the third-amended complaint, plaintiff is an attorney

who was a partner, joint adventurer, agent with and legal counsel for defendants, Sheldon Gross

and Henry Frank, with respect to various real estate business enterprises.  Edward Slavin, who is

not a party to this action, was a major investor in one of those enterprises, as well as its officer, director and employee. Plaintiff provided legal and marketing advice to defendants with respect to the enterprises, in addition to being their partner and joint adventurer. Ultimately, the business partnership failed, and Slavin lost his entire investment. He became emotionally disturbed as a result thereof and blamed plaintiff for his financial losses. On several occasions he spoke with Gross about his anger toward plaintiff and told Gross that plaintiff had ruined his life, so he was going to ruin his. He described several scenarios to Gross, such as going to plaintiff's house, ringing his doorbell, and punching him in the face with brass knuckles; or finding a hit man to kill plaintiff; or killing plaintiff himself and then committing suicide. According to the allegations, Slavin told Gross he had purchased a gun to kill plaintiff and asked him whether the caliber of the weapon would be sufficient to kill someone. The complaint further alleged that Gross suggested to Slavin it would be a bad idea to kill plaintiff in front of his family, and that it would be better to do it at his downtown office. Slavin told Gross he would wait until the suicide clause in his life insurance policy expired because he had made arrangements for him, Gross, to recoup his financial losses.

After one or more of these conversations with Slavin, Gross called Slavin's brother, Earl, and told him of the threats against plaintiff and asked him to take some action to protect him and others from Slavin. He also called Frank on several occasions to warn him about Slavin's threats and of his intention to shoot plaintiff at his house. The complaint further alleged that Slavin spoke with Frank several times, expressing his hostility toward plaintiff, and that Frank called Gross and asked him to get Slavin to stop calling him. Gross told Frank that Slavin had

purchased a handgun and asked him whether he, Gross, thought the caliber was sufficient to kill plaintiff. Based upon Slavin's behavior and threats, both defendants took steps to protect themselves because they believed he was a potential threat to them. However, according to the complaint, at no time did they warn plaintiff or contact a law enforcement agency about these threats. Slavin's threats were made over an undisclosed period of time, but according to plaintiff's allegations, they were made during the period of time when defendants were still accepting the benefit of plaintiff's professional services on behalf of the joint venture and while they were still partners and joint adventurers with him.

On January 24, 2000, at approximately 8:15 p.m., Slavin drove to plaintiff's house, rang his doorbell, and shot him four times in the chest, right wrist, left arm and right shoulder. As a direct result of his injuries, plaintiff has been rendered a complete paraplegic.

Count I of the complaint alleged a breach of the duty to warn based upon defendants' independent and superior knowledge of Slavin's threats against plaintiff, their knowledge that plaintiff was unaware of those threats, and the foreseeability of the harm based upon Slavin's numerous threats, and that defendants had a duty to warn plaintiff "as evidenced by their mutual telephone calls warning each other and the calls made to Earl Slavin seeking help and assistance." Count II of the complaint alleged negligent performance of a voluntary undertaking in that defendants took steps to prevent Slavin from carrying out his threats by trying to discourage him and calling his brother and suggesting to him that he not kill plaintiff at his home in front of his family.

Defendants filed a motion to dismiss the complaint under section 2-615 of the Code of

Civil Procedure (Code) (735 ILCS 5/2-615 (West 2004)), which the circuit court granted with prejudice as to count I, II and V. The court held there is no duty to warn of potential criminal conduct and that such a duty did not arise in this particular case simply because the parties had an ongoing business relationship. The court concluded that in order for such a duty to arise, there must have been a special relationship between the parties, but since there was no such relationship, a duty to warn did not arise. Plaintiff's motion to reconsider was denied, and this appeal followed.

The issue on this appeal is whether the trial court erred in dismissing counts I and II of the third-amended complaint.

A motion to dismiss under section 2-615 of the Code challenges the legal sufficiency of the complaint by alleging defects on its face. City of Chicago v. Beretta U.S.A. Corp., 213 Ill. 2d 351, 364 (2004). We review an order granting or denying a section 2-615 motion *de novo*. Beretta U.S.A. Corp., 213 Ill. 2d at 364. In reviewing the sufficiency of a complaint, we accept as true all well-pled facts and reasonable inferences that may be drawn from those facts. Brewster v. Rush-Presbyterian-St. Luke's Medical Center, 361 Ill. App. 3d 32, 35 (2005). Our review also requires that we construe the allegations in the complaint in the light most favorable to the plaintiff. Brewster, 361 App. 3d at 35.

"An appeal from a section 2-615 dismissal for failure to state a cause of action reviews only the question of the legal sufficiency of the complaint, by ascertaining whether the essential elements of the cause of action were alleged." Bank of Northern Illinois v. Nugent, 223 Ill. App. 3d 1, 9 (1991). "The ultimate facts to be prove[n] must be alleged, and any evidentiary support or conclusions drawn from the allegations should not be considered in a section 2-615 motion."

Nugent, 223 Ill. App. 3d at 9.  "The complaint is to be construed liberally and should only be dismissed when it appears that plaintiff could not recover under any set of facts."  Elson v. State Farm Fire & Casualty Co., 295 Ill. App. 3d 1, 5 (1998).

The essential elements of a cause of action based on common law negligence may be stated briefly as follows: the existence of a duty owed by the defendant to plaintiff, a breach of that duty, and an injury proximately caused by that breach.  Kirk v. Michael Reese Hospital & Medical Center, 117 Ill. 2d 507, 525 (1987).  There can be no recovery in tort for negligence unless the defendant has breached a duty owed to the plaintiff.  Boyd v. Racine Currency Exchange, Inc., 56 Ill. 2d 95, 97 (1973).  Whether a duty of care exists is a question of law to be determined by the court.  Beretta U.S.A. Corp., 213 Ill. 2d at 391.

Here, the sole inquiry before us concerns the existence of a legal duty.  Plaintiff asserts that defendants owed him a duty to warn him that Slavin was going to come to his house and shoot him.  Defendants deny they had such a duty because the law did not require them to protect plaintiff from the criminal attack by a third person.

We find that there is no Illinois law directly on point that would support a finding that defendants owed plaintiff a duty to warn of Slavin's threats.  Plaintiff's assertion that defendants owed him a duty is based on the theory of their superior knowledge that Slavin planned to attack plaintiff.  Generally speaking, Illinois law does not impose a duty to protect another from a criminal attack by a third person (Hills v. Bridgeview Little League Ass'n, 195 Ill. 2d 210, 228 (2000)), unless the attack is reasonably foreseeable and the parties stand in one of four special relationship, namely, (1) common carrier and passenger, (2) innkeeper and guest, (3) business invitor and invitee, and (4) voluntary custodian and protectee.  Fancil v. Q.S.E. Foods, Inc., 60

Ill. 2d 552, 559-60 (1975); Hernandez v. Rapid Bus Co., 267 Ill. App. 3d 519, 524 (1994). There are four exceptions to the rule that a party does not owe a duty of care to protect another from the criminal acts of third persons: (1) when the parties are in a special relationship and the harm is foreseeable; (2) when an employee is in imminent danger and this is known to the employer; (3) when a principal fails to warn his agent of an unreasonable risk of harm involved in the agency; and (4) when any party voluntarily or contractually assumes a duty to protect another from the harmful acts of a third party. Petersen v. U.S. Reduction Co., 267 Ill. App. 3d 775, 779 (1994). The general rule that one has no affirmative duty to control others in the absence of a special relationship has been, and continues to be, much debated among legal commentators, but has not been amended or modified by our supreme court. See Hills, 195 Ill. 2d at 228-29.

Accordingly, we find that the general rule controls - that no affirmative duty existed for defendants to prevent a criminal attack on plaintiff by a third party. The complaint does not allege that one of the special relationships between plaintiff and the defendants exists that would impose a duty on defendants; accordingly, we must apply the general rule. Plaintiff asks that we take a broader view of his pleadings and apply "ordinary negligence principles" to the facts in this case to determine whether a duty was present, as the court did in Kohn v. Laidlaw Transit,

Inc., 347 Ill. App. 3d 746 (2004). This we decline to do.[1] Our supreme court has chosen to adopt the principles governing the duty to control the conduct of third parties as set forth in sections 314 through 320 of the Restatement (Second) of Torts (Restatement (Second) of Torts §§314 through 320 (1965)), and we are bound by the decisions of our supreme court. *Cf.* Brewster, 361 Ill. App. 3d at 37.

Plaintiff cites several cases to support his theory that the superior knowledge theory applies. We find that each of the major cases cited by plaintiff is inapposite to the circumstances presented in the case at bar.

Happel v. Wal-Mart Stores, Inc., 199 Ill. 2d 179 (2002), involved a situation in which a regular customer of defendant's pharmacy was injured when she was prescribed a medication that was related to one she was allergic to. Happel, 199 Ill. 2d at 181. Defendant's pharmacy violated its policy that required the pharmacist to check for medical allergies before dispensing new medication, and the failure to adhere to this policy caused the plaintiff's injury. Happel, 199

---

[1] We note that although the court in Kohn took an extra step by applying "ordinary negligence principles" after determining that plaintiff did not fall within the relationships that provide an exception to the general rule, the ultimate outcome was the same - that defendants owed no duty to plaintiff to prevent the criminal activity of a third party.

Ill. 2d at 182-84. The supreme court found that a duty to warn existed, encompassed within the pharmacist's duty of ordinary care. Happel, 199 Ill. 2d at 189. That is in sharp contrast to the instant case, where there is no duty of ordinary care imposed under the law.

In Bajwa v. Metropolitan Life Insurance Co., 208 Ill. 2d 414 (2004), defendant's insurance agent violated its policy that required that the agent personally meet with the proposed insured, witness the proposed insured's signature on the policy and question the proposed insured. The failure to adhere to this policy allowed a fraudulent insurance policy to be obtained which resulted in a fatality. Bajwa, 208 Ill. 2d at 417-19. The court concluded that a duty of due care to advise a proposed insured of a life insurance policy taken out on his life arises where it is reasonably foreseeable that a policy taken out on someone's life without his knowledge or consent can lead to injury or death at the hands of the person who procured the policy, and there is a sufficient likelihood of injury, and is supported by the rule against issuing these kinds of policies. Bajwa, 208 Ill. 2d at 427-28. Thus, unlike in the case at bar, the court's decision was based at least in part on a preexisting duty for insurance companies in issuing policies.

Finally, in Orrico v. Beverly Bank, 109 Ill. App. 3d 102, 103 (1982), decedent, who was mentally disabled, maintained a checking and savings account in defendant's bank, wherein he deposited a disability check in the amount of $4,500. An officer of defendant contacted plaintiff, decedent's mother, to tell her that decedent had been in the bank wanting a large sum of money to go to Hong Kong. Plaintiff discussed her fears about what could happen to the decedent if he were given such a large amount of money, and told the officer that she did not want decedent to have the money. Plaintiff, on the bank's advice, obtained a court order to become the conservator over the decedent's estate. Orrico, 109 Ill. App. 3d at 103-04. She delivered a copy

of the court order naming her as the temporary conservator over decedent's estate to defendant

on July 29, 1975. However, contrary to defendant's usual policy of immediately placing a

restraint on accounts where a conservator has been appointed, no restraint was placed on

decedent's account, and he subsequently withdrew a large sum of money and went to a park

where he flashed it to strangers. Orrico, 109 Ill. App. 3d at 104-05. His body was later found

with a gunshot wound to the back of the head, and the money was gone. Plaintiff initiated and

won a wrongful death lawsuit in which the trial court entered judgment notwithstanding the

verdict because the defendant owed no duty to decedent once he left its premises. Orrico, 109

Ill. App. 3d at 105. On appeal, this court held the trial court had erred in ruling that the bank did

not owe a duty to decedent. The court stated:

> "[T]he case is governed by the *** general principle that a
>
> defendant owes a duty not to increase foreseeable risk of harm to
>
> another." Orrico, 109 Ill. App. 3d at 105.

The court further held that the duty did not extend to the world at large but was limited

by various considerations, such as the "relation between the parties, the gravity and

foreseeability of the harm, the utility of the challenged conduct and the burden of guarding

against the injury." Orrico, 109 Ill. App. 3d at 105-06. The court found that defendant owed a

duty to decedent because of its relationship to him, that the burden on the bank was minimal

because of the court order, and that the risk of harm to decedent was foreseeable given his

mental condition. Orrico, 109 Ill. App. 3d at 106. Here, again, the duty turned on the parties'

relationship and the fiduciary duty owed by the defendant because of that relationship.

In contrast, in the case at bar, there was no such preexisting duty on the defendants. The

parties are individuals who at one time had business relationships with one another. The third-amended complaint's allegation that the business relationship was ongoing at the time of the attack is of no consequence to the issue of whether defendants owed plaintiff a duty.

Our analysis of the case law leads us to the conclusion that plaintiff's complaint did not sufficiently allege facts to withstand a section 2-615 motion to dismiss and that count I was properly dismissed.

Finally, plaintiff argues the court erred in dismissing count II of the third-amended complaint, which alleges the negligent performance of a voluntary undertaking. In that count, it is alleged that defendant Gross tried to discourage Slavin from carrying out his plan and suggested to him that he not attempt to kill plaintiff at his home in front of his family; called Slavin's brother to warn him of the threats against plaintiff; warned Frank of Slavin's threats against plaintiff; and called Slavin and tried to discourage him during the course of the phone calls. Count II further alleges that Gross owed a duty to plaintiff as a result of his voluntary undertaking to warn and breached that duty when he failed to directly call plaintiff; failed to make sure that Frank communicated Gross's concerns to plaintiff; failed to make sure that Frank communicated Slavin's threats to plaintiff; unreasonably accepted Slavin's brother's assurances that Slavin would not harm plaintiff; and failed to notify the police.

"Whether a defendant has voluntarily undertaken a legal duty to a plaintiff is a question of law." Rogers v. Clark Equipment Co., 318 Ill. App. 3d 1128, 1132 (2001). "Any duty imposed on a defendant under this theory is limited to the extent of the undertaking." Rogers, 318 Ill. App. 3d at 1132.

Illinois courts have adopted section 324A of the Restatement (Second) of Torts to

analyze voluntary undertaking claims.  Bailey v. Edward Hines Lumber Co., 308 Ill. App. 3d 58,

65  (1999); citing Vesey v. Chicago Housing Authority, 145 Ill. 2d 404, 415-16 (1991);

Charleston v. Larson, 297 Ill. App. 3d 540, 546 (1998).  Section 324A provides:

> "One who undertakes, gratuitously or for consideration, to
>
> render services to another which he should recognize as necessary
>
> for the protection of a third person or his things, is subject to
>
> liability to the third person for physical harm resulting from his
>
> failure to exercise reasonable care to protect his undertaking, if
>
> > (a) his failure to exercise reasonable care increases the risk
>
> of such harm, or
>
> > (b) he has undertaken to perform a duty owed by the other
>
> to the third person, or
>
> > (c) the harm is suffered because of reliance of the other or
>
> the third person upon the undertaking."  Restatement (Second) of
>
> Torts §324A (1965).

The essential element of the voluntary undertaking doctrine is an undertaking, and the

duty of care imposed on a defendant is limited to the extent of his undertaking.  Bailey, 308 Ill.

App. 3d at 66.

Here, plaintiff has not established that either defendant undertook to provide for his

safety from Slavin.  Plaintiff contends that count II is "for [Gross's] failure to discourage Slavin,"

which is not an accurate statement of the voluntary undertaking doctrine.  Plaintiff has failed to

show how the conversations between Gross and Slavin rose to the level of rendering services

necessary for the protection of a third person, in this case, plaintiff.  The cases cited by plaintiff

in support of his argument are distinguishable, also.  In <u>Vesey</u>, 145 Ill. 2d at 415, the housing

authority was found liable for bodily harm resulting from the voluntary negligent installation of a

protective guard over a steam pipe in plaintiff's apartment. In <u>Cross v. Wells Fargo Alarm</u>

<u>Services</u>, 82 Ill. 2d 313, 317 (1980), the supreme court in *dicta* stated that the housing authority

voluntarily undertook to provide part-time guard service at the project, and in providing that

service it was obligated to use reasonable care not to create increased dangers to persons

lawfully on its property.  In <u>Nelson v. Union Wire Rope Corp.</u>, 31 Ill. 2d 69, 85 (1964), the

supreme court noted that the defendant was liable for physical injury resulting from the negligent

performance of its voluntary undertaking to perform safety inspections of elevators or hoists.  No

such situation existed in the case at bar, and plaintiff has not demonstrated that the alleged

conversations between Gross and Slavin or Gross and Frank were intended to protect plaintiff or

intended to do so.  We therefore conclude that count II was properly dismissed by the trial court.

Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

WOLFSON, J., specially concurs.

HALL, J., concurs in part and dissents in part.


JUSTICE WOLFSON, specially concurring:

I agree that our decisions do not provide for a legal duty

in the circumstances presented by this case.  But that does not

soothe the disquiet one feels at the result we have reached.  If

1-04-3567

a simple phone call to Mr. Iseberg would have prevented the events of that tragic day, it seems to me the failure to make that call should be of greater interest to our jurisprudence.

Justice Hall, concurring in part and dissenting in part:

The majority correctly recognizes the general rule that, ordinarily, a party owes no duty of care to protect another from the harmful or criminal acts of third persons. In upholding the dismissal of the plaintiff's complaint, they further recognize and address two exceptions to the general rule, i.e., (1) when the parties are in a special relationship and the harm is foreseeable, and (2) when any party voluntarily or contractually assumes a duty to protect another from the harmful acts of third parties. However, the majority's analysis of count I fails to address the applicability of a third exception to the general rule, namely, when a principal fails to warn his agent of an unreasonable risk of harm involved in the agency. Petersen v. U.S. Reduction Co., 267 Ill. App. 3d 775, 779, 641 N.E.2d 845 (1994); Restatement (Second) of Agency § 471 (1958).

Based on section 471 of the Restatement (Second) of Agency, a duty for a principal to issue a warning to an agent would arise only where the risk is (1) unreasonable, (2) involved in the employment, (3) foreseeable, and (4) the agent is not likely to become aware of it. Restatement (Second) of Agency §471 at 405 (1958); see MacDonald v. Hinton, 361 Ill. App. 3d 378, 386, 836 N.E.2d 893 (2005). Therefore, if the plaintiff was an agent of the defendants and faced an unreasonable risk of harm, known to the defendants, but unknown to him, the defendants owed a duty to the plaintiff to warn him of the danger. See Petersen, 267 Ill. App. 3d at 775.

The allegations of the third amended complaint establish the necessary elements for the

application of the principal/agent exception to the general rule.  As the majority acknowledges, the plaintiff was an agent of the defendants.   The plaintiff alleged that he acted as real estate agent for the defendants as well as provided legal advice in the Leikam Farm Joint Venture.  Mr. Slavin blamed his loss in connection with that venture on the plaintiff and communicated to the defendants that he would harm the plaintiff.  As to foreseeability, the risk of a criminal assault on an employee is foreseeable if the employer knew or should have known of facts evidencing a threat of harm particular to his employees but not common to all persons in the area. MacDonald, 361 Ill. App. 3d 386.  Here, the threats communicated to the defendants by Mr. Slavin were directed specifically against the plaintiff.  Finally, since Mr. Slavin was no longer involved in the investment, it was unlikely that the plaintiff would have become aware of Mr. Slavin's threats on his own.

   I agree that count II failed to establish a voluntary undertaking.  However, I conclude that count I of the third amended complaint alleged sufficient facts to establish the principal/agent exception to the general rule that there is no duty to defend against criminal attacks by third parties.  I would reverse the circuit court's dismissal of count I of the  third amended complaint and remand for further proceedings.  Therefore, I respectfully dissent in part.