ELIZABETH ROGERS, Plaintiff-Appellant, v. JOHN KILLIAN REAGAN *et al.*, Defendants-Appellees.

First District (2nd Division) No. 1—03—0965

Opinion filed January 25, 2005.

528

Lane & Lane, of Chicago (Stephen I. Lane, of counsel), for appellant.

Cassiday, Schade & Gloor, L.L.P., of Chicago (Bruce C. Wall, Morgan M. Strand, and Trisha K. Tesmer, of counsel), for appellee Kate Patterson.

Krista R. Frick and Karen L. Beverly, both of Bollinger, Ruberry & Garvey, of Chicago, for appellee Blair C. Cline.

Bruce Farrel Dorn & Associates, of Chicago, for appellee Tom Tillett.

Robert Marc Chemers, John J. Walsh III, Scott L. Howie, and Richard R. Gordon, all of Pretzel & Stouffer, Chtrd., of Chicago, for appellee Taylor Kravitt.

JUSTICE WOLFSON delivered the opinion of the court:

The plaintiff, Elizabeth Rogers, sued the defendants for injuries resulting from an incident on a bicycle path. On June 19, 1999, Rogers

was riding her bicycle south on the Green Bay Trail near Winnetka, Illinois. The five defendants were walking side by side on the path heading north. Rogers swerved to avoid the defendants and collided with defendant John Reagan, causing her to fall from her bicycle and sustain serious injuries. All the defendants except Reagan moved for summary judgment, contending they had no duty to Rogers and there was no proximate cause. The trial court granted summary judgment for the defendants. Rogers appeals. We affirm.

FACTS

In their depositions, Rogers and the five defendants agreed Saturday, June 19, 1999, was clear and sunny. The path on which Rogers was riding was straight, and there was nothing to block the vision of any of the parties. The path was about seven feet wide and paved with a gravel shoulder on either side. There were no lines demarcating lanes on the path. The path was used by bicyclists, rollerbladers, and pedestrians. The defendants were walking north on the path to Taylor Kravitt's house, on their way from a Blockbuster video store.

The defendants agreed they were walking in a straight line across the path, with Reagan on the far left or west side of the path. There is some disagreement on the positions of the other four defendants. Rogers said the person in the middle was female, and the others were males. Kravitt said he and Kate Patterson were walking on the east shoulder, with Kate to his right, and Blair Cline and Tom Tillett to his left. Cline said their positions from west to east were Reagan, Patterson, Cline, Tillet, and Kravitt. Tillet said he was on the east side of the path, Patterson was next to Reagan, and he was unsure about the others. Reagan and Patterson did not remember anyone's position.

According to Rogers, she was on her way back from a 20-mile bicycle ride from South Evanston to Highland Park. She saw the defendants when she was about a block and a half away. They were walking in a straight line on the paved part of the path. They were not doing anything that made her feel nervous or concerned. She was listening to the radio on her Walkman with the volume set at a low level so she could hear noises around her. She wore a bicycle helmet fitted over her brow bone, requiring her to look up and down at times.

Rogers looked down briefly then looked up again at the defendants. Two of the defendants were walking on the right side of the path where she was riding. She tried to read their body language in order to decide whether to get off her bike or go around them. She did not recall whether she gave any verbal warning of her approach, although all the defendants said Rogers did not say anything before the collision, nor did they speak to her.

As Rogers got closer to the defendants, they appeared to be absorbed in their conversation. She did not make eye contact with them. She decided to go around the defendants by swerving onto the gravel shoulder on her right. She testified that there was plenty of room to go around them. As she turned, she slowed her bicycle from about six to eight miles an hour to about four to six miles an hour. She then collided with Reagan on the west side of the path when she hit him with her arm. She had no recollection of how she fell off her bicycle and no memory of what happened directly afterward. When she came to, she was somewhere on the bike path, and Patterson was holding her hand. A young man was telling her he was sorry, and someone on a bike stopped and asked if she needed help. She was taken away in an ambulance and later received surgery on her right arm, whose bone was shattered. She also had a hairline fracture of her pelvis.

Kravitt testified there were a lot of bicyclists, walkers, and roller-bladers on the path that day. At one point, a man on a bicycle towing a children's trailer passed the defendants going south. He saw Rogers as she came onto the path about two to three blocks away from them. She was moving quite quickly, faster than 15 to 20 miles an hour. Her head was down, and her helmet was loosely fitted and covering her eyes. She was hunched over and looked very tired. Kravitt said Rogers did not notice them until her handle bar hit Reagan's shoulder and she fell off her bike. Rogers did not swerve onto the shoulder before the collision. There was plenty of room for her to pass them on the path. If the path were divided into five lanes, "lane one" and part of "lane two" on the west side of the path were completely empty. After the collision, Rogers' helmet and Walkman were on the ground, and Kravitt could hear music from the headphones.

Tillet testified that Rogers was in "lane one" at the time of the collision. He did not remember her riding on the shoulder at any time before the collision. The defendants' positions were not blocking the path to the point that it was unusable to people on the path. He did not remember seeing Rogers before the collision.

Cline testified that Rogers was biking about 15 to 20 miles an hour. He never saw her slow down. Her head was down with her hands on the handlebars. When he first saw her, she was between "lane one" and the shoulder. Cline said there was access for people to pass on both sides of the path. Rogers veered to her right when she was about a foot away. Reagan's shoulder hit the handlebar, and Rogers flew off the bike and hit her head on the concrete path. Right before she got in the ambulance, Rogers apologized and said it was her fault.

Reagan testified he saw Rogers when she was far away down the trail. The next time he saw her was a second before impact. He was on

the west side of the path, at least a foot or two from the edge. Rogers was on the west side of the path, closer to the edge of the path. He never saw her on the gravel. He doubted Rogers even saw him because her head was down, and she made no move to avoid him. In the second before impact, she was leaning over the handlebar with her head facing down. Her left shoulder hit his left shoulder, and he swung around.

Reagan did not see Rogers fall, but saw her lying on the path five or six feet away. He and Kravitt went to call 911, while the others stayed with Rogers. When they returned, Reagan told her he was sorry. He said it because she was in pain. After the incident, he gave a statement to the police that he heard Rogers say she "didn't see them coming and her headphones were on loud."

Patterson did not remember seeing Rogers or the collision. All she remembered was they were walking on the Green Bay Trail, and then there was a lady on the ground.

DECISION

Summary judgment is appropriate only where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2—1005(c) (West 2002).

Our review of a summary judgment ruling is *de novo*. *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 43, 809 N.E.2d 1248 (2004).

Rogers contends the court erred in finding no duty of care existed between the defendants and Rogers as a user of the bicycle path. She also contends each of the defendants was a proximate cause of her injury because of their positions across the path, even though she came in contact only with Reagan. She says a number of disputed material facts preclude summary judgment, including whether defendants were obstructing her path, whether she swerved to avoid defendants, and defendants' contentions that they did not see her as she was approaching. Their failure to see what should have been clearly visible was not compatible with ordinary due care.

■ "A duty of care arises when the parties stand in such a relationship to one another that the law imposes upon defendant an obligation of reasonable conduct for the benefit of plaintiff." *Deibert v. Bauer Brothers Construction Co.*, 141 Ill. 2d 430, 437, 566 N.E.2d 239 (1990). Whether defendant owes plaintiff a duty of care is a question of law to be determined by the court. *Deibert*, 141 Ill. 2d at 437-38. Relevant factors include: the foreseeability of injury, the likelihood of injury, the magnitude of the burden of guarding against the injury, the consequences of placing that burden on the defendant, and the possible

seriousness of the injury. *Deibert*, 141 Ill. 2d at 438, citing *Ward v. K mart Corp.*, 136 Ill. 2d 132, 151, 554 N.E.2d 223 (1990).

■ Proximate cause encompasses two distinct requirements—cause in fact and legal cause. *Lee v. Chicago Transit Authority*, 152 Ill. 2d 432, 455, 605 N.E.2d 493 (1992). To determine cause in fact where, as here, there are multiple factors which may have caused the injury, we ask whether a defendant's conduct was a material element and a substantial factor in bringing about the injury. *Lee*, 152 Ill. 2d at 455. Legal cause is established only if the defendant's conduct is "so closely tied to the plaintiff's injury that he should be held legally responsible for it." *McCraw v. Cegielski*, 287 Ill. App. 3d 871, 873, 680 N.E.2d 394 (1996). An assessment of legal cause involves an inquiry into foreseeability—whether the injury is of a type that a reasonable person would see as a likely result of his conduct. *Lee*, 152 Ill. 2d at 456.

Although proximate cause generally is a question of fact, a court may determine lack of proximate cause as a matter of law where the facts alleged do not sufficiently establish both cause in fact and legal cause. *Harrison v. Hardin County Community Unit School District No. 1*, 197 Ill. 2d 466, 476, 758 N.E.2d 848 (2001).

■ Rogers compares this case to *Clausen v. Carroll*, 291 Ill. App. 3d 530, 684 N.E.2d 167 (1997), where the plaintiffs sued the alleged participants in a drag race for injuries and deaths resulting from a collision with a vehicle. The trial court entered summary judgment in favor of the defendant not physically involved in the collision. The appellate court reversed, holding that: (1) all participants in a drag race could be held equally liable for an injury resulting from such a race, even when the participant being sued did not physically cause the injury; and (2) there were issues of fact precluding summary judgment as to whether the defendant not physically involved in the collision was engaged in a "joint concerted tortious activity" that caused the deaths and injuries. *Clausen*, 291 Ill. App. 3d at 539-40. The court looked to section 876 of the Restatement (Second) of Torts, providing that one is liable for the tortious conduct of another if he:

> "(a) does a tortious act in concert with the other or pursuant to a common design with him, or
>
> (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or
>
> (c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person." Restatement (Second) of Torts § 876 (1979), quoted in *Clausen*, 291 Ill. App. 3d at 537.

To be subject to a duty under section 876 the defendant's conduct must be "more than benign." *Sanke v. Bechina*, 216 Ill. App. 3d 962, 971, 576 N.E.2d 1212 (1991). The defendant must actively participate in the tortious conduct of another. In *Sanke,* the plaintiff's complaint alleged the defendant encouraged a driver to exceed the speed limit and disregard a stop sign, while making gestures that encouraged the driver to recklessly operate the car. Those allegations, said the court, were sufficient to state a cause of action grounded in section 876.

Rogers contends defendants' joint conduct blocked her path of travel and her attempt to avoid a collision, causing her to collide with Reagan and fall from her bicycle. She says a trier of fact should decide whether their conduct was negligent.

In their responses, defendants contend they had no duty to Rogers because the foreseeability of injury to a third person merely from walking down a bike path was so slight as to be nonexistent. The evidence showed other users of the path were able to pass the defendants without incident. Furthermore, imposing a duty on users of the bike path to act as a caretaker for other users would be impractical and burdensome.

The evidence indicates neither defendants nor Rogers said anything to each other as Rogers approached. Rogers decided to turn her bicycle onto the gravel shoulder in order to pass the defendants. In doing so, she came into contact with Reagan and fell off her bicycle. Rogers admitted she thought she had enough room to go around and did not think the defendants had a malicious intent to make any purposeful contact with her.

We cannot say the circumstances in this case establish a duty of care owed the plaintiff by any of these four defendants. Arguably, it was foreseeable that an oncoming bicyclist would have to go around five people who were blocking the path. But that is not the same as saying they should have reasonably foreseen the plaintiff's injury. The evidence shows both the plaintiff and the defendants thought the plaintiff had room to go around, and neither of the parties verbally signaled the other. There were no signs of danger. We do not find the kind of "joint concerted tortious activity" present in *Clausen*, 291 Ill. App. 3d at 539-40. Although there are differences in the parties' accounts of the incident, we find none of these inconsistencies is so material as to preclude summary judgment.

Because we find these defendants did not owe a legal duty of care to the plaintiff, we see no need to address the proximate cause issue.

534

CONCLUSION

We affirm the trial court's ruling finding summary judgment in favor of the defendants.

Affirmed.

HALL and GARCIA, JJ., concur.