No. 2--08--0138        Filed: 12-3-08

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| RYAN T. SIMMONS, as Special Administrator ) | Appeal from the Circuit Court | |
| of the Estate of April M. Simmons, Deceased, ) | of Kane County. | |
| and as Special Administrator of the Estate of ) | | |
| Addison Elizabeth Simmons, Deceased; and ) | | |
| GAETANO CHIARIELLO, as Special ) | | |
| Administrator of the Estate of John Chiariello, ) | | |
| Deceased, ) | | |
| ) | | |
| Plaintiffs-Appellees, ) | | |
| ) | | |
| v. ) | Nos. 06--L--164 | |
| ) | 06--L--177 | |
| JOHN D. HOMATAS, ) | 07--L--3 | |
| ) | 07--L--6 | |
| Defendant ) | | |
| ) | Honorable | |
| (On Stage Productions, Inc., d/b/a Diamonds ) | F. Keith Brown, | |
| Gentlemens Club, Defendant-Appellant). ) | Judge, Presiding. | |

JUSTICE O'MALLEY delivered the opinion of the court:

In this appeal, we are called upon to answer questions certified by the circuit court of Kane County pursuant to Supreme Court Rule 308 (155 Ill. 2d R. 308). The questions arose after the trial court denied in part defendant's (On Stage Productions, Inc., d/b/a Diamonds Gentlemens Club (On Stage)) motions under section 2--615 of the Code of Civil Procedure (735 ILCS 5/2--615 (West 2006)) to dismiss the complaints of plaintiffs, Ryan T. Simmons (Simmons), as special administrator

of the estates of his wife, April M. Simmons, and his unborn daughter, Addison Elizabeth Simmons, and Gaetano Chiariello (Chiariello), as special administrator of the estate of his son, John Chiariello (John). Plaintiffs' complaints alleged, among other things, that On Stage was negligent in requiring an obviously intoxicated defendant, John D. Homatas (not a party to this appeal), to leave its premises and to drive away in the car he arrived in, resulting in a collision that killed all of plaintiffs' decedents. The trial court determined that plaintiffs stated viable causes of action against On Stage sounding in negligence and partially denied On Stage's motions. The trial court certified questions regarding plaintiffs' negligence claims. We answer the questions affirmatively, finding viable negligence claims against On Stage on these pleadings.

The following summary is drawn from the allegations of plaintiffs' complaints. At all relevant times, On Stage operated a fully nude strip club, called Diamonds Gentlemens Club, at a location in unincorporated Du Page County. On Stage knew that most of its patrons would arrive and depart by car. Du Page County's liquor licensing is strictly regulated; adult entertainment clubs serving alcohol are prohibited from allowing fully nude dancing. Consequently, On Stage did not have a liquor license. Instead, On Stage encouraged its patrons to bring their own alcohol. Chiariello alleged that operating a "bring your own" establishment is an integral part of On Stage's business plan because the "intoxication of its patrons generates substantial direct and indirect revenue." Chiariello further alleged that (1) On Stage counted on the fact that less-inhibited patrons (due to alcohol consumption) would be more likely to tip the dancers, providing On Stage with indirect revenue; and (2) On Stage earned direct revenue by charging its patrons for the incidentals necessary to support alcohol consumption, like glasses, ice, soft drinks, soda water, tonic, and other mixers. In addition,

On Stage prohibited its patrons from bringing their own mixers and from bringing lower-alcohol-content beverages, like beer and wine.

Chiariello alleged that On Stage's business plan was designed to exploit loopholes in liquor regulation, such as by avoiding otherwise required employee training about intoxication, and to avoid dramshop liability. Unlike a regulated tavern, On Stage's servers did not receive "Beverage Alcohol Sellers and Servers Education and Training." In addition, Chiariello alleged that On Stage "actually encourages its patrons to abuse the consumption of alcohol in order to increase [its] business revenue."

On January 4, 2006, at about 9 p.m., Homatas drove John to Diamonds. As required by On Stage, Homatas surrendered his car to the valet and paid a fee. The valet drove Homatas's car away. Homatas and John knew that they were allowed to consume only hard liquor in the club; accordingly, they brought a fifth of rum and a fifth of vodka. Homatas and John were given a table and, for the next two hours, they drank vodka and rum. They purchased glasses, ice, and mixers from On Stage employees. Also during this two-hour period, Homatas and John purchased several private table dances from the dancers, in accord with On Stage's requirements.

During the two-hour period, Homatas and John drank their liquor and became visibly intoxicated. Rather than advising them to stop drinking, On Stage servers encouraged the two to pour themselves additional drinks and allowed them to purchase more ice and mixers. At about 11:10 p.m., Homatas was observed vomiting in the men's restroom. When On Stage employees discovered that Homatas was vomiting in the restroom, they ejected both Homatas and John from the club. On Stage employees directed its valet service to bring Homatas's car to the front door. On Stage

employees placed Homatas in the driver's seat of the car and John in the passenger seat and directed Homatas to drive away from the premises.[1]

At about 11:25 p.m., Homatas was spotted driving erratically on Route 25. His speed was estimated to be over 80 miles per hour. Homatas's car collided head-on, on the wrong side of the road, with a car driven by April Simmons, who was then 8½ months pregnant. As a result of the collision, John, April, and her unborn child were all killed. The collision occurred less than 10 miles from Diamonds.

On January 3, 2007, plaintiffs each filed a complaint. Each complaint included counts based on the Dramshop Act (235 ILCS 5/6--21 (West 2006)) and the Wrongful Death Act (740 ILCS 180/0.01 et seq. (West 2006)). On May 4, 2007, On Stage filed its section 2--615 motions to dismiss the complaints. On November 8, 2007, the trial court granted On Stage's motions with respect to the Dramshop Act counts (Simmons complaint counts I, II, III, and IV; Chiariello complaint count II) but reserved ruling on the common-law negligence counts of each complaint. On December 21,

---

[1]While we have paraphrased the complaints above, we here quote them verbatim.

Chiariello alleged that "employees of [On Stage] ordered the valet service to start Homatas'[s] car and bring it to the front door of the club. Employees of [On Stage] then opened the driver's door of the car and directed Homatas and [John] to immediately drive away from the premises."

Simmons alleged that "Homatas would likely be driving a vehicle when he left the premises of [the club]. Despite their knowledge aforesaid, said agents and employees of [On Stage] negligently and carelessly directed John D. Homatas, while he was in an intoxicated condition to leave the premises of the club."

2007, the trial court ruled on the remaining counts, denying On Stage's motion to dismiss and finding that the complaints sufficiently stated claims against On Stage for negligence.

The trial court identified the issue it was considering as:

"whether a legal duty existed. Plaintiffs seek to hold [On Stage] liable for negligence under common law principles. [On Stage's section 2--615 motions to dismiss] claim[] that plaintiffs have failed to state a cause of action because [On Stage] owe[s] no common law duty to any of the plaintiffs. As previously decided by this [c]ourt, the Dram Shop Act [235 ILCS 5/6--21 (West 2006)] is not applicable because [On Stage] did not sell or give alcohol to Homatas. This [c]ourt recognizes that there is no common law cause of action against any provider of alcoholic beverages for injuries arising out of the sale or gift of such beverages." (Emphasis in original.)

The court then considered the issue of duty, noting that, " '[u]nless a duty is owed, there is no negligence.' American National Bank & Trust Co. v. National Advertising Co., 149 Ill. 2d 14, 26 (1992)." The court also noted that it must decide "whether defendant and plaintiff stand in such a relationship to one another that the law imposes on defendant an obligation of reasonable conduct for the benefit of plaintiff." In order to determine whether a duty exists, the court enumerated the factors to be considered: "the reasonable (1) foreseeability and (2) likelihood of injury, (3) the magnitude of the burden on defendant in guarding against injury and (4) the consequence of placing that burden on defendant."

Turning to the Chiariello complaint, the trial court determined that the special relationship of business invitor-invitee existed between On Stage and John. The trial court considered Osborne v. Stages Music Hall, Inc., 312 Ill. App. 3d 141 (2000) (duty based on business invitor-invitee special

relationship extended beyond the doors of the premises), Haupt v. Sharkey, 358 Ill. App. 3d 212 (2005) (duty to protect patron against foreseeable criminal acts of third party extended beyond legal property line), and Harris v. Gower, Inc., 153 Ill. App. 3d 1035 (1987) (tavern employees placed intoxicated-to-unconsciousness decedent in car, where he froze to death; court held that tavern had affirmative duty, apart from any issue of dramshop liability, not to place decedent in peril), and held that On Stage had a duty to John. The trial court reasoned:

"Based on the facts as plead[ed,] this duty arose to [John] as a business invitee, who was escorted by agents of [On Stage] to an automobile in [sic] which [On Stage] held the keys to and gave to an obviously intoxicated patron whose intoxication was in accordance with [On Stage's] business plan that its patrons become intoxicated in order to spend more money at its premise[s]. A reasonable finder of fact could foresee that [On Stage's] conduct could result in harm to [John]. Furthermore, based on Osborne, Haupt, and Shortall[,] such duty can go beyond [On Stage's] premises. Harris shows that it is not the fact that Homatas was intoxicated but the conduct of [On Stage] putting [John] at risk."

The trial court then turned its attention to the Simmons complaint. The trial court noted that April and Addison were not business invitees and had no special relationship with On Stage. The trial court proceeded to consider the existence of any duty under the four factors it previously identified: "foreseeability, likelihood of injury, magnitude of the burden, and consequences of placing the burden on the defendants." The trial court further noted that the "touchstone" of its duty analysis "is to ask whether a plaintiff and a defendant stood in such a relationship to one another that the law imposed upon the defendant an obligation of reasonable conduct for the benefit of the plaintiff."

The trial court relied on the analysis in Kohn v. Laidlaw Transit, Inc., 347 Ill. App. 3d 746 (2004) (despite no special relationship triggering a duty, the court analyzed the issue of duty according to the four-factor test identified earlier), and Orrico v. Beverly Bank, 109 Ill. App. 3d 102 (1982) (analyzed duty of bank according to the four-factor test), in determining that On Stage's allegedly negligent conduct created or contributed to the risk of harm to April and Addison, allowing the court to apply the four-factor test. Considering each of the factors, the trial court concluded that On Stage also owed a duty of reasonable care to April and Addison under the circumstances of the case. The trial court further took pains to limit the extent of this finding:

"This [c]ourt finds this to be a very unique set of circumstances which distinguishes it from the cases which were cited by [On Stage]. There is no need to create a global duty exception to businesses that are not subject to Dram Shop laws whom [sic] allow patrons to bring in alcohol upon their business, nor operators of parking lots, to become responsible for intoxicated persons who use their services and subsequently operate an automobile. *** [On Stage's] duty derives from the general duty of ordinary care which an actor owes when his affirmative conduct creates the risk."

The trial court certified a question on the duty issue for each plaintiff for immediate permissive interlocutory appeal to this court pursuant to Supreme Court Rule 308 (155 Ill. 2d R 308). We granted On Stage leave to appeal and now consider the certified questions.

For Simmons, the trial court certified the following question:

"Whether the defendant, [On Stage], a business operator who is not subject to the Dram Shop Act, (because it does not sell or serve alcoholic beverages upon its premises), has a duty of ordinary care to the Simmons [decedents], who[,] while motoring on a public

highway, were killed due to the negligent operation of a motor vehicle driven by Homatas, who within a short period of time prior to the aforesaid motor vehicle collision, was an invitee of defendant's place of business under the following circumstances:

- where defendant's valet service took control of Homatas's vehicle upon his entering defendant's place of business;

- encouraged its invitee Homatas to bring alcoholic beverages onto its premises in order to consume to the point of intoxication;

- thereafter removed its invitee Homatas from the premises because of his intoxication; then after controlling its invitee's automobile while he was on its premises, relinquished said automobile into the hands of its invitee Homatas;

- while defendant knew or should have known that due to Homatas's intoxication he was unable to operate a motor vehicle;

- then allowed said Homatas to drive the vehicle away from the premises onto the public highway[.]"

For Chiariello, the court certified the following question:

"Whether the defendant, [On Stage], a business operator who is not subject to the Dram Shop Act (because it does not sell or serve alcoholic beverages upon its premises), owed a duty of unreasonable risk of harm[2] to a business invitee [John], who shortly after leaving the defendant's place of business, was killed in a motor vehicle accident on a public

---

[2]Despite the awkward way this certified question is phrased, we deem it to be functionally equivalent to Simmons's certified question, asking whether On Stage owed a duty to prevent unreasonable risk of harm to John.

highway, due to the negligent operation of a motor vehicle, driven by Homatas, who within a short period of time prior to the aforesaid motor vehicle collision, was also an invitee of defendant's place of business under the following circumstances:

- where defendant's valet service took control of Homatas's vehicle upon his entering defendant's place of business;

- where defendant as part of its business plan encouraged its invitee Homatas to bring and consume alcoholic beverages to and beyond the point of intoxication upon its premises;

- thereafter removed its invitee Homatas from its premises due to his intoxication;

- ordered and assisted the invitee Homatas into the driver seat of his vehicle;

- ordered invitee [John] off of the premises and into the intoxicated Homatas's vehicle;

- allowed said intoxicated invitee Homatas to drive the vehicle away from the premises and onto the public highway;

- where defendant was aware that its business invitee [John] was a passenger in said vehicle and that the driver invitee Homatas had a level of intoxication which was obvious enough that a reasonable person would have determined that he was unable [to] operate a motor vehicle[.]"

We note that the certified questions inexplicably present slightly different wordings. For example, Simmons's certified question states only that On Stage relinquished Homatas's automobile back into his custody, while Chiariello's certified question states that On Stage ordered and assisted Homatas

into the driver's seat of his automobile. For another example, Chiariello's question notes that On Stage, as part of its business plan, encouraged Homatas to bring and consume alcohol at its club, while Simmons's question notes only that On Stage encouraged Homatas to bring and consume alcohol at its club. Additionally, Chiariello's question sets forth that Homatas consumed alcohol to and beyond the point of intoxication, while Simmons's question notes that Homatas consumed alcohol to the point of intoxication. While we point out the differences in the certified questions, our analysis will make clear that we regard them as functionally equivalent and that the differences do not materially affect our answers.

Our consideration of an appeal pursuant to Rule 308 is generally limited to the questions certified by the trial court. Johnson v. State Farm Mutual Automobile Insurance Co., 323 Ill. App. 3d 376, 379 (2001). Where necessary, however, we can go beyond the certified questions to consider the appropriateness of the trial court's order. Johnson, 323 Ill. App. 3d at 379. An appeal pursuant to Rule 308 necessarily presents a question of law, subject to our de novo review. Townsend v. Sears Roebuck & Co., 227 Ill. 2d 147, 153 (2007).

During our review of the parties' briefs in this matter, we discerned an unaddressed issue that was pertinent to our resolution of the certified questions. We ordered the parties "to submit supplemental briefs on the issue of whether section 876 of the Restatement (Second) of Torts (concert of action) provide[d] a basis upon which to find a duty of care owed by defendant *** to plaintiffs." The parties complied with our order.

Section 876 of the Restatement (Second) of Torts provides:

"For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he

(a) does a tortious act in concert with the other or pursuant to a common design with him, or

(b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or

(c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person." Restatement (Second) of Torts §876, at 315 (1979).

Comment d to section 876 provides:

"Advice or encouragement to act operates as a moral support to a tortfeasor and if the act encouraged is known to be tortious it has the same effect upon the liability of the adviser as participation or physical assistance. If the encouragement or assistance is a substantial factor in causing the resulting tort, the one giving it is himself a tortfeasor and is responsible for the consequences of the other's act. This is true both when the act done is an intended trespass (see Illustrations 4 and 5) and when it is merely a negligent act. (See Illustration 6). The rule applies whether or not the other knows his act is tortious. (See Illustrations 7 and 8). It likewise applies to a person who knowingly gives substantial aid to another who, as he knows, intends to do a tortious act.

The assistance of or participation by the defendant may be so slight that he is not liable for the act of the other. In determining this, the nature of the act encouraged, the amount of assistance given by the defendant, his presence or absence at the time of the tort, his relation to the other and his state of mind are all considered. (See Illustration 9). Likewise, although a person who encourages another to commit a tortious act may be responsible for other acts

by the other (see Illustration 10), ordinarily he is not liable for other acts that, although done in connection with the intended tortious act, were not foreseeable by him. (See Illustration 11). In determining liability, the factors are the same as those used in determining the existence of legal causation when there has been negligence (see §442) or recklessness. (See §501)." Restatement (Second) of Torts §876, Comment d, at 317 (1979).

To be liable under section 876, the defendant's conduct must be more than benign. Rogers v. Reagan, 355 Ill. App. 3d 527, 533 (2005). In other words, the defendant must actively do something to facilitate another's tortious conduct. Rogers, 355 Ill. App. 3d at 533; Sanke v. Bechina, 216 Ill. App. 3d 962, 971 (1991). Here, plaintiffs have alleged that On Stage's conduct was more than benign, because On Stage placed an intoxicated Homatas behind the wheel of his car and ordered him to drive away onto the public roadways.

Section 876 subjects On Stage to liability for the collision that killed the decedents. Plaintiffs alleged that On Stage's valet service took Homatas's car when he and John arrived at the club. While at the club, Homatas drank hard liquor steadily for a period of about two hours. On Stage actively encouraged and facilitated Homatas's drinking, even as he became obviously intoxicated. At about 11:10 p.m., Homatas had ingested so much alcohol that he began to vomit in the bathroom of On Stage. On Stage employees noticed that Homatas was vomiting and ejected him from the club. On Stage employees retrieved Homatas's car from its valet service, placed John in the car, and placed Homatas behind the wheel. On Stage then required Homatas to drive off of its property and onto the public roadways. Encouraging and facilitating Homatas's drinking, ejecting him from the club, and placing him behind the wheel with the requirement that he drive his car away from On Stage and onto the public roadways constitute substantial assistance under subsection (b) of section 876. On Stage

clearly knew that Homatas was intoxicated and that, if Homatas were to drive, then he would be engaging in negligent conduct, breaching his duty of ordinary care when operating a motor vehicle. Accordingly, On Stage is subject to liability for its in-concert actions of facilitating Homatas's intoxication, ejecting Homatas when he became too intoxicated, placing him behind the wheel of his car while he was intoxicated, and requiring him to drive away from the premises and onto the public roadways.

Illinois courts have applied section 876 as a basis for liability in similar cases. In Fortae v. Holland, 334 Ill. App. 3d 705, 716 (2002), the court held that section 876 provided an accurate definition of in-concert liability. There, two vehicles formed a convoy. Akers drove a semi tractor conveying a heavy load; Holland was driving the lead vehicle, with the responsibility of warning Akers about road conditions in front of the convoy. Fortae, 334 Ill. App. 3d at 708-09. Traffic in front of Holland came to standstill in a 55-mile-per-hour speed zone, and Holland applied his brakes without warning Akers. Akers collided with Holland, forcing Holland's vehicle into the oncoming-traffic lane, where it collided with the plaintiff's vehicle. Fortae, 334 Ill. App. 3d at 709. The defendants challenged the imposition of in-concert liability, arguing that it allowed the jury to find in favor of the plaintiff without ever finding that the defendants had engaged in any negligent conduct. Fortae, 334 Ill. App. 3d at 715. The court rejected the argument, finding that section 876 was an accurate statement of the law. Fortae, 334 Ill. App. 3d at 716. The court further explained that, because Holland's responsibilities included keeping a lookout as to road conditions in front of the convoy and keeping Akers from following him too closely, Holland's failure to prevent Akers from driving too closely amounted to encouragement for that conduct. Fortae, 334 Ill. App. 3d at 719. The court specifically distinguished Umble v. Sandy McKie & Sons, Inc., 294 Ill. App. 3d 449, 451-

52 (1998), in which a service station that repaired and returned a vehicle to an intoxicated driver was deemed not to be liable to the victim when the intoxicated driver collided with the victim. Fortae, 334 Ill. App. 3d at 719. The court noted that the relationship between Holland and Akers contributed to the finding that Holland had rendered substantial assistance to Akers's negligent driving, because he failed to warn or keep Akers from following him too closely. Fortae, 334 Ill. App. 3d at 720.

Here, too, the relationship between On Stage and Homatas weighs in favor of finding that On Stage rendered substantial assistance to Homatas's negligent operation of his vehicle while intoxicated. Homatas was at the club as On Stage's business invitee. Encouraged by On Stage, Homatas steadily drank hard liquor for two hours. When On Stage discovered Homatas to be so intoxicated that he had begun to vomit, On Stage evicted Homatas from the club and then, despite his intoxication, On Stage placed Homatas behind the wheel of his car and required him to drive off the premises onto the public roadways. Thus, On Stage substantially assisted Homatas's tortious conduct of driving while intoxicated.

The imposition of liability for placing a drunk driver behind the wheel of his car was foreshadowed in Umble. There, the repair shop was not liable for returning a repaired vehicle to its intoxicated driver. Umble, 294 Ill. App. 3d at 451. The court noted that there was "no allegation that any of [the] defendant's employees actively encouraged [the drunk driver] to get back in his car and drive." Umble, 294 Ill. App. 3d at 451. Further, the repair shop's "acts of repairing a tire and a headlight were not inherently wrongful and [the] defendant did not actively encourage [the driver] to engage in wrongful activity." Umble, 294 Ill. App. 3d at 452. Thus, Umble specifically distinguished a situation such as that here, where a defendant affirmatively encourages a driver to become intoxicated, actively places the intoxicated driver behind the wheel, and then encourages or

requires the intoxicated driver to drive onto the public roadways, in holding that liability under section 876 did not attach to its factual circumstances. Accordingly, we hold that the trial court did not err in refusing to dismiss plaintiffs' complaints.

On Stage argues that it is not liable and that the court erred in refusing to dismiss the entirety of plaintiffs' complaints. On Stage argues that plaintiffs have failed to demonstrate proximate causation sufficient to trigger its liability. On Stage points out that comment d (On Stage erroneously identifies it as comment b) to section 876 states that, "[i]n determining liability, the factors are the same as those used in determining the existence of legal causation when there has been negligence." Restatement (Second) of Torts §876, Comment d, at 317 (1979). On Stage argues that the consumption of alcohol by Homatas was the legal cause of the deaths of the decedents.

Proximate causation is comprised of two distinct requirements: cause in fact and legal cause. Abrams v. City of Chicago, 211 Ill. 2d 251, 258 (2004). "A defendant's conduct is a 'cause in fact' of the plaintiff's injury only if that conduct is a material element and a substantial factor in bringing about the injury." Abrams, 211 Ill. 2d at 258. Further, a defendant's conduct constitutes a material element and a substantial factor in causing the injury if, absent the conduct, the injury would not have occurred. Abrams, 211 Ill. 2d at 258. Legal cause raises a question of foreseeability. Abrams, 211 Ill. 2d at 258. "The relevant inquiry is whether the 'injury is of a type that a reasonable person would see as a likely result of his or her conduct.' " (Emphasis in original.) Abrams, 211 Ill. 2d at 258, quoting First Springfield Bank & Trust v. Galman, 188 Ill. 2d 252, 260 (1999).

Applying the foregoing principles to the case at bar, we conclude that both plaintiffs have pleaded the existence of proximate causation sufficient to trigger On Stage's liability under section 876 of the Restatement (Second) of Torts. As an initial matter, On Stage does not challenge the

existence of cause in fact. Cause in fact is established because, absent On Stage's conduct of placing an intoxicated Homatas behind the wheel of his car and requiring him to drive off On Stage's premises and onto the public roadways, the injuries to the decedents would not have occurred. While On Stage does not raise the issue, it could be argued that, even if Homatas had voluntarily driven his vehicle, a similar accident would have occurred. However, there is nothing in the pleadings to indicate that Homatas wished to leave the club at the time that On Stage ejected him and John. While an accident may have occurred if Homatas had voluntarily left On Stage's premises, it would not have been this accident at issue here. Thus, On Stage's conduct is a cause in fact of the injuries complained of here.

Turning to legal causation, we hold that On Stage's conduct was also a legal cause of the decedents' injuries. We agree with plaintiffs that, not only was the accident foreseeable, but in this case it was nearly predictable. The complaints both allege, and the certified questions provide, that Homatas was extremely intoxicated at the point that On Stage removed him from its premises. By placing Homatas at the wheel of his vehicle, On Stage knew that Homatas would be driving while extremely intoxicated. In that situation, it was patently foreseeable that Homatas would collide with another car on a public roadway. Accordingly, we hold that the conduct of On Stage was also a legal cause of the decedents' injuries.

On Stage resorts to the well-settled common-law rule that it is a person's decision to consume alcohol that proximately causes an injury and not the provision of alcohol to that person. See, e.g., Howlett v. Doglio, 402 Ill. 311, 318 (1949); Hill v. Alexander, 321 Ill. App. 406, 419 (1944). Plaintiffs, however, are not pointing to the provision of alcohol to Homatas--indeed, On Stage did not provide the alcohol; rather, plaintiffs are emphasizing On Stage's affirmative conduct of

encouraging Homatas to become intoxicated and then making him drive as proximately causing the injuries here. We find the common-law rule to be inapposite under the circumstances of this case. We note further that, had On Stage allowed Homatas to leave of his own volition, then the common-law rule might apply; however, the conduct of forcing an intoxicated patron to leave and drive away constitutes the substantial assistance or encouragement necessary to trigger in-concert liability under section 876 of the Restatement (Second) of Torts.

On Stage also points to Young v. Bryco Arms, 213 Ill. 2d 433, 448 (2004), for the proposition that comment d to section 876 of the Restatement does not provide an answer to the question of whether a defendant's alleged conduct constitutes a legal cause of a claimed injury. In Young, the plaintiffs attempted to hold the defendant gun manufacturers and retailers liable for public nuisance, based on the idea that the defendants designed, manufactured, marketed, and sold guns in a manner that was intended to appeal to criminals in general and to juvenile gang members in particular. Young, 213 Ill. 2d at 440. The supreme court criticized the appellate court's reliance on section 824 of the Restatement as providing an analysis of proximate cause. Young, 213 Ill. 2d at 448-49. On Stage adopts the supreme court's critique and seeks to apply it to section 876 of the Restatement. Even accepting the idea that comment d to section 876 does not provide the answer to whether On Stage's alleged conduct constitutes legal cause of the claimed injuries, the remainder of the supreme court's analysis is directly applicable to our analysis here.

In Young, the supreme court noted that comment b to section 824 "pose[d] the question--Is the conduct of these defendants a legal cause of the alleged interference with a public right?" Young, 213 Ill. 2d at 449. The supreme court then stated that, where the plaintiff's injury results, not from the defendant's direct action, but from the subsequent, independent action of a third person, then the

issue of legal causation turns on foreseeability: whether the intervening cause is of the type that a reasonable person would see as a likely result of his conduct. Young, 213 Ill. 2d at 449, quoting Young v. Bryco Arms, 327 Ill. App. 3d 948, 970 (2001). The supreme court noted as well that, if the defendant's conduct furnishes a condition by which the injury is made possible, and a third party, acting independently, causes the injury, then the defendant's creation of the condition will not be a proximate cause of the injury. Young, 213 Ill. 2d at 449.

Young further examined the issue of legal causation and the condition-versus-cause analysis applicable to a case in which the injury is caused by an intervening act of a third party. The court noted that the defendants argued that their conduct furnished a condition that made the injuries possible and did not constitute a legal cause of the injuries. Young, 213 Ill. 2d at 449. By contrast, the plaintiffs contended that the targeted marketing constituted a legal cause of the injuries. The court noted that the plaintiffs' authority was drawn from traditional nuisance cases in which an injury arose from a defendant's use of land, impinging on a plaintiff's use and enjoyment of his or her own property. Young, 213 Ill. 2d at 451. The court rejected the plaintiffs' expansive view of legal cause, noting that it would require that a tavern's mere provision of alcohol would subject the tavern to liability for the illegal conduct of its patrons after the patrons had left the tavern. Young, 213 Ill. 2d at 451.

Applying the supreme court's analysis in Young to the circumstances alleged here, we conclude that On Stage's conduct proximately caused the decedents' injuries because it was foreseeable, if not virtually assured, that Homatas would collide with another car as he drove along the public roadways. Thus, using the analysis called for in Young, we find legal causation here,

resulting from the foreseeable occurrence that an intoxicated patron who is forced to drive his car away from a club and onto the public roadways will be involved in a collision with another car.

On Stage nevertheless seizes on Young's tavern example, arguing that the supreme court had "prognosticated" the fact-pattern of this case, pointing to the following passage:

"In contrast, plaintiffs' theory of legal cause would permit the imposition of public nuisance liability upon the proprietor of a tavern not only for the unruly conduct of patrons on the premises, but also for harm caused by the illegal conduct of patrons after they leave. As long as the patrons' consumption of alcohol were shown to be a cause in fact of injury, the serving or selling of alcohol would be deemed the legal cause, even though the patrons have committed crimes. A tavern owner could be liable for the creation of a public nuisance if it were shown that his patrons caused traffic accidents by driving under the influence, damaged property by driving on lawns or crashing into garbage cans, or committed criminal assaults while intoxicated. We reject such an expansive view of legal cause." Young, 213 Ill. 2d at 451.

The foregoing passage illustrates a typical dramshop fact pattern. What distinguishes this case from that fact pattern and renders On Stage's argument inapposite is On Stage's alleged conduct. Under the facts that plaintiffs here have alleged, and the certified questions provide, On Stage's affirmative conduct of encouraging Homatas to drink to extreme intoxication, placing the intoxicated Homatas into his car, and requiring him to drive off of the premises and onto the public roadways was the legal cause of the injuries here. This conduct serves to differentiate this case from the typical dramshop fact pattern in which a tavern provides its patron with alcohol and otherwise does not influence the patron's behavior. Accordingly, we do not find On Stage's argument to be persuasive.

On Stage, relying on Young's tavern example and its own argument, posits that a finding of liability here will open the litigation floodgates as well as allow plaintiffs to establish limitless legal cause. We disagree. It is On Stage's substantial assistance and encouragement of Homatas's conduct that provides the basis for liability and legal causation here. This is a sufficiently exceptional fact pattern to engender our belief that our finding will not open litigation floodgates or provide future plaintiffs unlimited opportunities to establish legal causation.

On Stage changes tack and attempts to analogize this case with Karas v. Strevell, 227 Ill. 2d 440 (2008). According to On Stage, the significance of Karas lies in its analysis of the scope of a defendant's duty in a situation where ordinary negligence standards do not apply, like in a contact sport. See Karas, 227 Ill. 2d at 453 (" 'the practical effect of applying an ordinary negligence standard would be to open a legal Pandora's box, allowing virtually every participant in a contact sport, injured by another during a "warm up" or practice, to bring an action based on the risks inherent in virtually every contact sport. This is exactly the type of result the courts have sought to avoid' "), quoting Savino v. Robertson, 273 Ill. App. 3d 811, 818 (1995). In Karas, the supreme court held that a defendant's duty in a contact sport is to refrain from willful and wanton or intentional misconduct. Karas, 227 Ill. 2d at 451-54. Relying on Karas, On Stage argues that finding a duty under section 876 of the Restatement would conflict with the common-law rule that "there is no legal cause from the third party criminal acts of an able bodied man who imbibes alcohol." We fail to see the connection between Karas's duty analysis and On Stage's invocation of the traditional intervening-cause rule. On Stage's argument conflating duty and causation is inapt. However, under section 876, by providing substantial assistance or encouragement to a third party, a defendant shares the liability for the third party's conduct, whether it be conduct subject to ordinary negligence principles or

conduct subject to a narrower duty, like that in a contact sport. Further, we reject the notion that subjecting On Stage to in-concert liability will somehow unleash a "Pandora's box" of negative consequences on the legal system. Those purported consequences are adequately limited by the requirement that the defendant affirmatively, through conduct that is more than benign, provide the third party with substantial assistance and encouragement in the third party's tortious conduct, and by keeping in mind the condition-versus-cause distinction.

On Stage next points to Wakulich v. Mraz, 322 Ill. App. 3d 768 (2001). This is puzzling, because On Stage concedes that Wakulich did not analyze its plaintiff's allegations under section 876. Further, On Stage characterizes the issue as whether the defendants in Wakulich had subjected themselves to liability by "encouraging" the plaintiff's decedent to consume alcohol; the court determined that there was no liability for encouraging or substantially assisting the plaintiff's decedent to consume alcohol. Wakulich, 322 Ill. App. 3d at 775. The analogy with Wakulich breaks down, however, because there (accepting On Stage's construction of the circumstances), the harm was caused by the defendants' encouragement of the plaintiff's decedent to drink alcohol, whereas here, the harm was caused by Homatas's driving while intoxicated, which On Stage had substantially assisted and encouraged. In Wakulich, the plaintiff's decedent's conduct of drinking alcohol was not tortious, but here, Homatas's conduct of driving while intoxicated was tortious. This distinction renders Wakulich inapposite and undermines On Stage's reliance on it.

Next, On Stage argues that plaintiffs have not effectively placed section 876 of the Restatement into play. On Stage asserts that neither plaintiff has alleged any conduct that is inherently wrongful and neither plaintiff has made any allegations of in-concert liability sufficient to

trigger the applicability of section 876. In support of this contention, On Stage relies on Umble and Carollo v. Al Warren Oil Co., 355 Ill. App. 3d 172 (2004).

The authority on which On Stage relies is distinguishable. In Umble, the court found that section 876 did not apply because there were no allegations that any of the defendant's employees actively encouraged the intoxicated third-party tortfeasor to get back in his car and drive. Umble, 294 Ill. App. 3d at 451. Here, by contrast, both plaintiffs alleged that On Stage ejected Homatas from the club, put him behind the wheel of his car, and required him to drive off the premises and onto the public roadways. These allegations are precisely the conduct that the Umble court implied would trigger liability under section 876. See Umble, 294 Ill. App. 3d at 451-52 ("We do not equate failing to prevent certain conduct with actively encouraging that conduct," discussing whether the defendant's employees encouraged the intoxicated third-party tortfeasor to reenter his car and drive).

Carollo is also distinguishable. First, Carollo involved the consideration of evidence from a jury trial on the merits. Carollo, 355 Ill. App. 3d at 178. More importantly, the appellate court reviewed the record on appeal and concluded that the plaintiff made no allegations that could implicate in-concert liability, proffered no evidence or arguments at trial on in-concert liability, and tendered no jury instructions or special interrogatories on in-concert liability. Here, by contrast, the posture of this case is still quite early. Plaintiffs have made allegations that do implicate in-concert liability, namely, that On Stage placed Homatas behind the wheel of his car and required him to drive off its premises and onto the public roadways when he was obviously intoxicated. Carollo is distinguishable because the record here is not devoid of any allegations implicating in-concert liability.

Further, our conclusion that there are allegations in both plaintiffs' complaints that implicate in-concert liability also disposes of On Stage's contention. While plaintiffs do not appear to have

-22-

strongly pressed the in-concert liability argument before the trial court, we note that we may sustain the trial court's judgment on any ground appearing in the record, and in-concert liability appears on the face of plaintiffs' complaints. Rockford Memorial Hospital v. Havrilesko, 368 Ill. App. 3d 115, 121 (2006).

On Stage also argues that its status as a bailee meant that it had no legal right to refuse to return Homatas's car to him when he was leaving. In support, On Stage again relies upon Umble, 294 Ill. App. 3d at 454-55, and on Knighten v. Sam's Parking Valet, 206 Cal. App. 3d 69, 75, 253 Cal. Rptr. 365, 367 (1988), cited in Umble. Umble held that "[the] defendant was clearly a bailee for hire. Once [the intoxicated third-party tortfeasor] paid for the repairs and demanded the return of his keys, [the] defendant had no discretion to refuse without being found liable for conversion." Umble, 294 Ill. App. 3d at 454-55. Similarly, Knighten held that a valet parking service was not liable for returning the keys to an intoxicated patron. Knighten, 206 Cal. App. 3d at 75, 253 Cal. Rptr. at 367.

Both Umble and Knighten are distinguishable, and both for the same reason. Here, On Stage did not attempt to withhold from Homatas the keys to his car. Instead, On Stage ejected Homatas and placed him behind the wheel of his car, giving him no alternative but to drive his car off the premises and onto the public roadways. There was no demand for the return of his car by Homatas, unlike in Umble and Knighten.

In any event, Umble and Knighten explored whether a bailee has a duty to withhold a car from an intoxicated owner. Plaintiffs' allegations depart from that question and squarely implicate in-concert liability by alleging that On Stage affirmatively placed an obviously intoxicated Homatas behind the wheel of his car and required him to drive off. Had an obviously intoxicated Homatas requested his car keys at the close of business at On Stage, then we could find Umble and Knighten

to be on point; however, this case involves the question of whether a strip club, whose business model is structured to avoid dramshop liability, can avoid liability for requiring an intoxicated patron to drive onto the public roadways after ejecting him from its premises. We answer that question negatively.

On Stage argues in its supplemental reply brief that plaintiffs did not adequately address proximate causation, pointing to Kohn, 347 Ill. App. 3d at 755. In Kohn, the plaintiff was beaten by an infuriated mob after he had struck a child while pulling around a stopped school bus. The plaintiff alleged that the bus driver did not properly operate the mechanical arm and stop sign on the bus and that the bus driver told the crowd that she had extended the mechanical arm and stop sign, further inciting the mob against the plaintiff. Kohn, 347 Ill. App. 3d at 748-49. The court found that there was no proximate causation, by considering the question:

"How foreseeable and likely were these injuries to result from [the bus driver's] conduct as alleged in [the plaintiff's] complaint? In order for [the plaintiff] to establish foreseeability for the purpose of proving the existence of a legal duty, he must show that the criminal conduct was objectively reasonable to expect." Kohn, 347 Ill. App. 3d at 755.

Further considering proximate causation, the court noted:

"To find proximate cause, we must be able to say that [the plaintiff's] injuries are the natural and probable result of the defendants' acts or omissions and that an ordinarily prudent person could have foreseen [the plaintiff's] injuries as likely to occur as a result of [the bus driver's] conduct. *** As we discussed above, there is nothing natural and probable about a man being ambushed and brutally attacked by strangers while on his way to work after accidentally striking a small child departing a school bus." (Emphasis in original.) Kohn, 347 Ill. App. 3d at 756.

In contrast to the lack of foreseeability discussed in Kohn, here, that an intoxicated Homatas would become involved in a car wreck after On Stage had placed him behind the wheel and required him to drive away is both objectively reasonable and the natural and probable result of On Stage's conduct. Unlike Kohn, which did not find proximate causation, here, we hold that plaintiffs' allegations establish proximate causation sufficient to support the imposition of liability under section 876 of the Restatement.

On Stage also points to Iseberg v. Gross, 366 Ill. App. 3d 857, 862 (2006), aff'd, 227 Ill. 2d 78 (2007), and its critique of Kohn's attempt to apply ordinary negligence principles to determine whether a duty exists to guard against the criminal or tortious acts of a third party in the absence of a special relationship between the plaintiff and the defendant. Iseberg, however, discusses duty and sections 314 through 320 of the Restatement (Second) of Torts (Restatement (Second) of Torts §§ 314 through 320 (1965)) and does not discuss section 876 of the Restatement. Moreover, the application of section 876 does not turn on the relationship between the plaintiff and the defendant; rather, it requires the defendant, through conduct that is more than benign, to substantially assist or encourage the tortfeasor's tortious actions. For this reason, Iseberg is inapposite.

On Stage last argues that it did not substantially assist or actively participate in Homatas's tortious conduct. Relying on Rogers, 355 Ill. App. 3d at 533, On Stage posits that, to be subject to liability under section 876, a defendant must actively participate in the tortious conduct of the third-party tortfeasor. In Rogers, the five defendants were walking side by side along a bike path when the plaintiff approached on her bicycle. The evidence indicated that there was room on the path for a bicyclist to go around the defendants. As the plaintiff approached, she swerved around the group of the defendants, collided with one of the defendants, and fell from her bicycle, sustaining serious

injuries. Rogers, 355 Ill. App. 3d at 529-31. The court found no in-concert liability because there was no evidence that the defendants had a malicious intent to block the bike path or to make contact with the plaintiff. Rogers, 355 Ill. App. 3d at 533. The court also distinguished the circumstances there from those in Clausen v. Carroll, 291 Ill. App. 3d 530 (1997), in which under section 876 of the Restatement the driver of one of two cars involved in a drag race was held to be liable for the plaintiff's injuries, even though his car was not involved in the collision. Rogers, 355 Ill. App. 3d at 533. Based on the distinction of Clausen, the court held that the defendants did not owe the plaintiff a legal duty of care. Rogers, 355 Ill. App. 3d at 533.

On Stage takes the holding in Rogers and extrapolates from it that a defendant must be physically involved in the tortious conduct at the time the conduct occurs. We do not read Rogers so narrowly. Instead, we believe Rogers means what it says: "To be subject to a duty under section 876 the defendant's conduct must be 'more than benign.' [Citation.] The defendant must actively participate in the tortious conduct of another." Rogers, 355 Ill. App. 3d at 533. Rogers does not require physical proximity, only some form of active conduct that furthers the tortious conduct of the third-party tortfeasor. We perceive no requirement in Rogers that the defendant be present at the time and place of the tortious conduct to impose liability under section 876 of the Restatement.

Continuing with this temporal/physical proximity idea, On Stage next points to Wolf v. Liberis, 153 Ill. App. 3d 488, 497 (1987), in which in-concert liability was rejected when the defendant had left the scene of the original incident and her fiancé, while resisting several intervening attackers, collided with the plaintiff's decedent. In Wolf, the defendant had become intoxicated during an evening spent arguing with her fiancé. Late in the night, the defendant and her fiancé had resolved their argument, and the fiancé, concerned about her drinking, decided to follow her as she drove to

her own residence. Wolf, 153 Ill. App. 3d at 490. The defendant crashed her car into a store window. The fiancé backed the defendant's car out of the store window and told her to stay there while he contacted the police. The defendant drove off. The fiancé became involved in an altercation with several men, who were trying to either restrain or attack him. The fiancé managed to escape to his car, but, as he tried to drive away, one of the men opened the door and pulled on the steering wheel. The fiancé's car collided with and killed the plaintiff's decedent. Wolf, 153 Ill. App. 3d at 491. According to On Stage, the court rejected in-concert liability for the defendant under section 876 of the Restatement because the defendant had left the scene before the fatal accident occurred. We disagree.

The court held that the plaintiff had not "alleged or proved that [the defendant] in any way assisted or encouraged [the fiancé] in the negligent operation of his vehicle prior to the collision." Wolf, 153 Ill. App. 3d at 496. The court therefore did not base its decision on the fact that the defendant had left the scene. This is demonstrated by the court's analysis of the applicability of section 876 of the Restatement:

"Although [the defendant] had been drinking prior to the fatal accident, she committed no tortious act against [the plaintiff's decedent] by leaving [the fiancé's] apartment while intoxicated. Likewise, she committed no tortious act in concert with [the fiancé] merely because he followed her home in his car. The fact that he removed her car from the store window after the initial accident is not evidence that she assisted or encouraged any negligent conduct by [the fiancé] or that the two of them acted in accordance with a common plan to commit a tortious act with both of them knowing of the plan and its purpose." Wolf, 153 Ill. App. 3d at 497.

The court concluded its analysis by observing:

"The head-on collision was not caused by any actions of [the defendant] in leaving the scene of the accident but by independent subsequent events *** when one of [the fiancé's] three assailants attempted to wrest control of his steering wheel away from him. In our opinion, while the assailants who interfered with [the fiancé's] control of his vehicle were a material factor in bringing about the fatal accident, [the defendant] was not." Wolf, 153 Ill. App. 3d at 497-98.

While it is true that the defendant was not present at the location of the fatal accident, this did not form the basis of the court's holding. Instead, the defendant was not the proper third-party tortfeasor for purposes of section 876; rather, the fiancé's assailant who was trying to take control of his steering wheel was the proper third-party tortfeasor for purposes of section 876. We see nothing in Wolf that requires as a condition for liability that the defendant be present at the time and place of the conduct complained of.

On Stage next points to Fugate v. Galvin, 84 Ill. App. 3d 573 (1980), which, it notes, was "cited with approval" by Wolf. On Stage draws from Fugate the principle that a duty will be imposed only where the parties are in the proper legal relationship. Fugate, 84 Ill. App. 3d at 574. We find Fugate to be distinguishable because there was no analysis concerning section 876 in that case. Thus, Fugate can offer no guidance as to its proper application.

On Stage also points to Brandjord v. Hopper, 455 Pa. Super. 426, 429, 688 A.2d 721, 723 (1997), which refused to impose upon a passenger a duty to prevent an intoxicated driver from driving. In Brandjord, the defendants tailgated before and after they attended a professional football game. When the traffic had subsided, Punch, who owned the vehicle, began to drive the defendants

back to their residences. Punch struck and injured the plaintiff, a pedestrian, as he was crossing a street near the stadium. Punch was found to be intoxicated and was convicted of, among other things, driving under the influence of alcohol. Brandjord, 455 Pa. Super. at 428-29, 688 A.2d at 722. The plaintiff sued the defendants, alleging that they owed him a duty not to permit Punch to drive, because they knew Punch was intoxicated. Brandjord, 455 Pa. Super. at 429, 688 A.2d at 722.

The court held that a passenger owes no duty to a third person where the driver is intoxicated, absent some special relationship, a joint enterprise, a joint venture, or a right to control the vehicle. Brandjord, 455 Pa. Super. at 431, 688 A.2d at 723. Regarding the potential for in-concert liability under section 876, the court noted that there was no evidence that the defendants pressured or induced Punch to drink alcohol at any time during the day or that they furnished Punch with alcohol while he was driving. Likewise, the court noted that there was no evidence that the defendants knew that Punch was intoxicated or made Punch drive the vehicle; rather, the evidence showed that the defendants simply accompanied Punch to his car when he stated he wanted to leave. Brandjord, 455 Pa. Super. at 434, 688 A.2d at 725. Thus, the court determined that no facts existed that demonstrated substantial assistance or encouragement and would implicate section 876. Here, by contrast, On Stage's business plan encouraged its patrons to consume self-brought hard liquor on its premises (with mixers and other incidentals sold by On Stage); On Stage encouraged Homatas to consume his hard liquor to and past the point of intoxication; On Stage discovered that Homatas was vomiting due to intoxication and ejected him from the club because of that level of intoxication; and On Stage placed Homatas behind the wheel of his vehicle, placed John in the car as well, and required Homatas to drive away from the premises and onto the public roadways. This contrasts with the defendants' passive and acquiescent behavior in Brandjord; here, On Stage assisted and encouraged

Homatas's tortious conduct of driving while intoxicated. Brandjord offers no useful guidance on the application of section 876 to the factual circumstances present in this case.

On Stage completes its argument by attempting to distinguish plaintiffs' authority supporting the imposition of in-concert liability under section 876, particularly Umble and Fortae. On Stage again points out that Umble held that the repair shop/bailee had no right to refuse to return the car to its intoxicated owner. This is a red herring under the circumstances here, because Homatas did not demand his vehicle; rather, On Stage ejected Homatas from its club and placed him behind the wheel, knowing he was intoxicated. On Stage also asserts that Fortae supports its argument, noting that the Fortae court stated that the defendant "was present in the most obvious sense, because he was physically involved in the traffic accident," and that the defendant's relationship with the other driver "placed on him the responsibility to observe [the other driver's] driving." Fortae, 334 Ill. App. 3d at 719. From this, On Stage proposes that, in order to impose in-concert liability, there must be a special relationship between the defendant and the third-party tortfeasor. We disagree.

First, as noted, nothing in section 876 suggests that there be a special relationship beyond the substantial assistance or encouragement between the defendant and the third-party tortfeasor. Second, and interestingly here, even if there were such a requirement, Homatas was a business invitee, so in addition to the assistance and encouragement rendered by On Stage in placing an intoxicated Homatas behind the wheel of his car, the special relationship of business invitor-invitee existed between them. On Stage's proposed special relationship requirement does not preclude the imposition of liability here. Further, On Stage does not successfully distinguish the cases on which plaintiffs rely. Accordingly, we answer the certified questions in the affirmative.

Based on our resolution of the section 876 issue, we do not need to further consider On Stage's remaining arguments. For the foregoing reasons, we find that On Stage had a duty to both plaintiffs, and we answer both certified questions affirmatively. Accordingly, we remand the cause to the circuit court of Kane County for further proceedings consistent with this opinion.

Certified questions answered; cause remanded.

JORGENSEN and SCHOSTOK, JJ., concur.